Argued April 21, affirmed June 9, petition for rehearing
denied August 23, 1972

DIERINGER, *Appellant, v.* HEINEY, *Respondent.*

497 P2d 1201

*Herbert R. DeSelms,* Lincoln City, argued the cause and filed the briefs for appellant.

*Kenneth H. Colley,* Corvallis, argued the cause for respondent. With him on the brief were Colley and Morray, and James H. Smith, Corvallis.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

This is a habeas corpus proceeding instituted by plaintiff, Mrs. Doris Dieringer, against her adopted

daughter, Brenda Mae ("Penny") to determine the custody of the latter's minor son, Derrick ("Rickey") Alan Heiney. From a decree dismissing the writ, plaintiff appeals.

The lengthy facts in this case need not here be set forth in detail. Suffice it to say that Rickey was born in East Liverpool, Ohio, in December 1963, as the lawful issue of a marriage between defendant, then aged 16, and one Robert Lee Heiney. The defendant never established a home with her husband. Instead, both she and Rickey lived with her adoptive parents, the Dieringers, in East Liverpool, while defendant completed her high school education. In 1965, pursuant to a suit brought on her behalf by her mother as "next friend" in the Court of Common Pleas, Columbiana County, Ohio, the defendant was granted a divorce from Robert Heiney and awarded "the care, custody and control" of Rickey.

In 1968, after having completed three years of college at Ohio State University, the defendant married one David Bass. Sometime prior to January 1971, she came to Oregon and established a domicile here. In mid-January 1971, the defendant, who on numerous previous occasions had unsuccessfully requested the Dieringers to let Rickey live with her, went to East Liverpool, picked the boy up at school and, without the knowledge of her parents, took him with her back to Oregon. Thereafter, until the initiation of the instant habeas corpus proceeding, the defendant and her child continued to reside near Nashville, Oregon, with friends in a small communal-type living situation.

Seeking to have legal custody of Rickey changed from defendant to plaintiff, the plaintiff initiated a proceeding in the Columbiana County, Ohio, Juvenile

Court on April 5, 1971. It is admitted that neither defendant nor Rickey were at that time residents of or domiciled in Ohio. The motion was filed by plaintiff on behalf of defendant, then aged 24, as the latter's "next friend." The defendant, who was personally served with notice in Oregon, contacted an Ohio attorney and directed him to make a special appearance informing the Ohio court that both she and her son were no longer residents of Ohio and dismissing the juvenile court proceeding. That court nevertheless granted plaintiff's motion at a hearing on July 30, 1971. The court, resting its jurisdiction upon the earlier Ohio divorce decree and the status of Rickey as "a continuing ward of this court by virtue of said divorce," found that defendant

"* * * is an unfit mother and the temporary care, custody and control of said child was placed with the maternal grandparents * * * and said Brenda Heiney, etc., is ordered to turn said child over to * * * [them]."

Execution of final judgment was stayed by the Ohio court pending appeal of the case.

Armed with the order changing custody of Rickey, plaintiff came to Oregon and sued out this writ of habeas corpus for the purpose of enforcing the order and obtaining custody. After a hearing, the court below concluded that the Ohio Juvenile Court acted without jurisdiction and that Rickey's custody should remain with defendant. In dismissing the writ, the court stated, *inter alia:*

"As a matter of comment, the record should show that the Court is impressed with the vehemence and antagonism of the plaintiff and her husband throughout this proceeding, and is further impressed with the gentle nature and candor of the

respondent and her friends—I don't know how to define 'friends'."

Plaintiff appeals from the dismissal of the writ asserting that the court erred (1) in requiring her to proceed first in the presentation of evidence at the hearing below, (2) in refusing to recognize as binding the Ohio decree changing the custody of Rickey from the defendant to plaintiff, and (3) in not finding that the best interests of the child would be served by awarding custody to the plaintiff.

■ The court explained at the beginning of the hearing that "the orderly presentation of these proceedings require that in the interest of saving time and in determining the issues," plaintiff should proceed first with her evidence. Plaintiff was the moving party in this equity proceeding. Under ORS 17.210 and 17.215, the order of proof is within the sound discretion of the trial court. No abuse thereof is here shown. The assignment is without merit.

In her second assignment of error, plaintiff relies primarily upon the Ohio Juvenile Court order and maintains that it should be given full faith and credit. U. S. Const. art. IV, § 1. In *May v. Anderson,* 345 US 528, 73 S Ct 840, 97 L Ed 1221 (1953), the Supreme Court considered the application of the Full Faith and Credit Clause to an order changing the custody of children from one parent to another. The court said:

"Separated as our issue is from that of the future interests of the children, we have before us the elemental question whether a court of a state, where a mother is neither domiciled, resident nor present, may cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her *in personam.* Rights far more precious to appel-

lant than property rights will be cut off if she is to be bound by the Wisconsin award of custody.

> " '[I]t is now too well settled to be open to further dispute that the "full faith and credit" clause and the act of Congress passed pursuant to it do not entitle a judgment *in personam* to extra-territorial effect if it be made to appear that it was rendered without jurisdiction over the person sought to be bound.' *Baker v. Baker, Eccles & Co.*, 242 U. S. 394, 401, and see 403; *Thompson v. Whitman*, 18 Wall. 457; *D'Arcy v. Ketchum*, 11 How. 165." 345 US at 533.

■ The court below found, and we agree, that throughout the time of the Ohio Juvenile Court proceeding the defendant and the child were residents of and domiciled in Oregon. Defendant had sole legal custody of Rickey at all times subsequent to the Ohio divorce decree. Clearly, she did not violate that decree by bringing him to this state, and his domicile also became Oregon. *Miller v. Shufeldt*, 2 Or App 243, 246-47, 467 P2d 971 (1970); *Clark v. Jelinek*, 90 Idaho 592, 414 P2d 892, 893 (1966); *Lorenz v. Royer*, 194 Or 355, 368, 241 P2d 142, 242 P2d 200 (1952); *Griffin v. Griffin*, 95 Or 78, 87, 187 P 598 (1920).

In *Lorenz v. Royer*, supra, 194 Or at 371, the court quoted with approval from 2 Beale, The Conflict of Laws 717, § 144.3:

> " 'Since custody of a child by one parent carries with it domicil and a domestic status, jurisdiction to give the child to one parent or the other depends in principle on the domicil of the child; and a state which is the temporary residence of the child, not the domicil, cannot confer the right to custody. *A fortiori*, a decree for custody rendered in a state where the child is neither resident nor domiciled is void for lack of jurisdiction.' "

*Miller v. Shufeldt,* supra; *In re Hughes,* 73 Ariz 97, 237 P2d 1009, 1010-11 (1951); *Barnes v. Lee,* 128 Or 655, 658-59, 275 P 661 (1929); *Pickler v. Pickler,* 5 Wash App 627, 489 P2d 932 (1971). *See also,* Restatement (Second), Conflict of Laws § 79 (1971); Annotation, 35 ALR3d 520 (1971); Annotation, 4 ALR2d 7 (1949). At no time during the Ohio Juvenile Court proceeding were defendant or Rickey present in Ohio, domiciled in Ohio or personally subject to the jurisdiction of the juvenile court of Ohio. The plaintiff grandparent was not party to the Ohio divorce decree. No claim is made that the boy's mother is incompetent or that she, at age 24, requested that a "next friend" be appointed for her in the Ohio juvenile proceeding. At the time of the hearing below, defendant thus lawfully had custody in Oregon of Rickey pursuant to the original Ohio divorce decree. We conclude the second order of the Ohio Juvenile Court is not entitled to full faith and credit.

■ The validity of the divorce decree is not challenged. Thus, it was necessary that plaintiff show that conditions have substantially changed since the entry of that decree. *Lorenz v. Royer,* supra, 194 Or at 371; *Quinn v. Hanks,* 192 Or 254, 263, 233 P2d 767 (1951); *Crowell v. Crowell,* 184 Or 467, 198 P2d 992 (1948); *Ashbaugh v. McKinney,* 182 Or 652, 189 P2d 583 (1948); *Bartlett v. Bartlett,* 175 Or 215, 152 P2d 402 (1944); *Griffin v. Griffin,* supra; Annotation, 4 ALR3d 1277 (1965).

■ Here we are not dealing with a custody dispute between parents of a child. Rather, the grandparents seek to wrest the custody from their own adoptive daughter, who has had the exclusive legal custody of her son since 1965. Certainly the standard of proof required to establish the unfitness of a parent to retain

the custody of his or her child against the petition of grandparents, relatives or strangers is no less than that between parents, one of whom seeks a change of custody. Such unfitness must be clear from the evidence to support the conclusion that the best interests of the child require the divesting of the parent's custody.

■ The trial court after a lengthy hearing concluded that no such showing had been made here. In such cases we give weight to the findings and conclusions of the trial judge who saw and heard the witnesses.

We agree that the record here does not support a conclusion that the change in the manner in which this child now lives with his mother, when compared with that in which he had lived when in the home of his grandparents, had been detrimental to his welfare so as to warrant a change of custody. *Bartlett v. Bartlett,* 175 Or 215, 152 P2d 402 (1944).

Affirmed.