Argued October 10, reversed and remanded December 29, 1972

# HAWKINS, *Plaintiff-Respondent, v.* HAWKINS, *Defendant-Petitioner.*

504 P2d 709

*Gary K. Jensen,* Eugene, argued the cause for petitioner. On the brief were Gerald D. Gilbert and J. Sidney Armstrong, Eugene.

*Edward C. Harms, Jr.,* Springfield, argued the cause for respondent. With him on the brief were Harms & Harold, Springfield.

TONGUE, J.

This is a habeas corpus proceeding brought by plaintiff to gain the custody of his two daughters, aged three and six years, who at that time were living with defendant, their mother. Defendant appeals from a decree allowing the writ and ordering that the children be delivered to plaintiff, in accordance with the terms of a previous Alabama divorce decree and as required by our decision in *Lorenz v. Royer et ux,* 194 Or 355, 241 P2d 142, 242 P2d 200 (1952). The Court of Appeals affirmed from the bench, without opinion, 10 Or App 133, 497 P2d 1214 (1972).

Because of the public importance of the problems presented by this case and because of recent developments in the law on this subject since our decision in *Lorenz,* we granted the petition for review filed by defendant, as the mother of the children.[1]

In April 1971 defendant separated from plaintiff and filed a complaint for divorce against the plaintiff in this case in Montgomery County, Alabama. Plaintiff then filed an answer and a cross-complaint in that divorce proceeding, to which defendant responded.

In July 1971, before that case was tried, and allegedly "with explicit consent of the father of the children," defendant (the plaintiff in that case), moved with the children from Alabama to Oregon. Defendant also alleges that when the divorce case

---

[1] To avoid confusion, reference will be made to the mother of the children as "defendant" because she was the defendant in the habeas corpus proceeding subject to this appeal, despite the fact that she was the petitioner in the petition for review and the plaintiff in the original divorce proceedings in Alabama. For the same reasons, the father, who was the plaintiff in these habeas corpus proceedings, will be referred to as "plaintiff," despite the fact that he was the respondent in the petition for review and the defendant in the original divorce proceedings.

was tried she did not appear because she lacked funds to travel from Oregon to Alabama and also lacked funds "to complete payment required of me by my attorney." The Alabama court, after a hearing at which neither defendant nor her counsel was present, entered a decree on October 28, 1971, awarding custody of the children to their father, the plaintiff in this proceeding, which was filed by him on November 18, 1971.

In response to plaintiff's petition for a writ of habeas corpus, demanding delivery of the children to him, defendant contends that "[b]ecause of the voluntary and rightful removal of the Defendant herein and the children herein from the State of Alabama," the circuit court of that state lacked jurisdiction to enter a decree depriving her of the custody of the children, who had been in her rightful custody since birth. Defendant also contends (as held in *Lorenz*) that "[t]he domicile of a child is the same as the domicile of the parent of the child having rightful custody" and "[t]hat domicile is the State of Oregon." In addition, defendant alleges that she is a fit and proper person to have custody of the children; that "[a]ll parties necessary to an adjudication as to custody are before this court," and that "Alabama allows a change of custody decree to be entered by any Court of competent jurisdiction" and also "holds that Habeas Corpus is an appropriate remedy to determine custody." Finally, defendant contends on this appeal that *Lorenz* was incorrectly decided and should be overruled.

Plaintiff denies defendant's response to his petition and contends that the sole question to be decided is whether, in view of *Lorenz*, the Oregon court had jurisdiction and is required to give full faith and credit to the Alabama decree. He also contends that even

though defendant brought the children to Oregon "rightfully" and with plaintiff's consent, nevertheless, because the Alabama court had jurisdiction over the parties it had jurisdiction to enter a decree awarding custody to plaintiff which was entitled to full faith and credit in the courts of Oregon and which also deprived the Oregon court of jurisdiction.

On this record the trial court held that the Alabama court had jurisdiction to award to plaintiff the custody of the children who, according to the rule of *Lorenz*, were then still "domiciled" in Alabama, and also held, as required by *Lorenz*, that such a decree was entitled to full faith and credit so as to require delivery of the children to plaintiff and deprive the Oregon court of jurisdiction to do otherwise.

1. *Lorenz v. Royer—Basis for and criticism of "domicile" theory of jurisdiction.*

In considering *Lorenz* it is well to bear in mind both the facts of that case, as well as the basis for that decision. In *Lorenz*, as in this case, the court in which the divorce proceedings were pending in another state had acquired personal jurisdiction over both parties before one of them removed the children to Oregon and before that court had entered its decree awarding custody to the plaintiff. Indeed, in *Lorenz* custody of the children had been awarded pendente lite to plaintiff by the Indiana court. The children had then been moved temporarily to the home of defendant's parents in Illinois, with plaintiff's consent, prior to entry of the final decree. After entry of that decree, however, defendant secretly moved the children to Oregon and concealed their whereabouts from plaintiff for nearly three years.

The basis for our decision in *Lorenz* was that the "temporary removal" of the children to Illinois, with plaintiff's consent, did not defeat the jurisdiction of the Indiana court to award their custody to plaintiff; that the domicile of the children also remained in Indiana, because the domicile of a child follows that of the parent to whose custody it has been awarded; that when such a "status" of a child was "fixed by a court of competent jurisdiction, the decree of such court is entitled to full faith and credit in each state where the question may arise"; that it followed from these facts that the Indiana court had jurisdiction and that the mother's domicile "fixed" that of the children; that because the children were not domiciled in Oregon, the Oregon court "had no * * * jurisdiction" to change their custody to the father, regardless of change of circumstances or other facts; that "[o]ur opinion in this case is based entirely upon a jurisdictional question," and that the Indiana court, "and that court only," had jurisdiction to order a change in custody.[②]

In support of that decision the court cited decisions by the courts of several other states, as well as Restatement 57, 212, Conflict of Laws §§ 32, 147, among other authorities. The court also expressed the belief in *Lorenz* (at 381-82) that such a rule would tend to discourage kidnapping and that to hold otherwise would "make this state a mecca for all persons seeking to evade the jurisdiction of the courts of the state of their original domicile."

---

[②] 194 Or 355 at 368-69, 371, 381, 384. It was stated, however (at 375), that "[i]f a minor is found within this state who is deprived of parental care, control, and oversight, or who is neglected or abandoned and in need of protection, the courts of this state will afford at least temporary relief." Lorenz v. Royer et ux, 194 Or 355, 241 P2d 142, 242 P2d 200 (1952).

Since our decision in *Lorenz* in 1952, both this court and the Court of Appeals have consistently followed the rule as adopted in that case.[9] That rule also represented the traditional view on this subject at that time and that which had been adopted by the authors of the first Restatement of Conflicts, as previously

[9] These cases include the following:

Allen v. Allen, 200 Or 678, 268 P2d 358 (1954), held that because an Oregon court originally gave custody of a child to its father for 11 months of the year, the permanent domicile of the child was in Oregon and a California court had no jurisdiction to modify such custody provisions on request of the mother, so as to give her custody for one additional month.

Fox et ux v. Lasley, 212 Or 80, 318 P2d 933 (1957), held that because both parents of a child were domiciled in California, an Oregon guardianship for the child, which had been acquiesced in by the parents during a family emergency, must be terminated for lack of jurisdiction upon subsequent demand by the parents, regardless of what might be the best interests of the child.

Godfrey v. Godfrey, 228 Or 228, 364 P2d 620 (1961), held that where divorce proceedings were filed in Oregon and plaintiff was granted custody pendente lite, but then moved to Illinois with the child, the Oregon court could later modify its decree limiting defendant's visitation rights, in the absence of evidence that plaintiff intended to change her domicile to Illinois.

Bacon v. Bacon, 3 Or App 85, 472 P2d 283 (1970), held that after a California court granted plaintiff a divorce, with custody of a child, and the child was in Oregon with defendant for one year while plaintiff was ill, an Oregon court had no jurisdiction to change the custody of the child.

Duke v. Hanna, 5 Or App 223, 483 P2d 471 (1971), held that after a Georgia court awarded custody of a child to plaintiff, a soldier, who then remarried and while overseas left the child with his second wife, from whom defendant took the child and brought her to Oregon, an Oregon court had no jurisdiction to do other than to grant plaintiff's demand for return of the child.

Dieringer v. Heiney, 10 Or App 345, 497 P2d 1201 (1972), held, however, that despite an Ohio divorce granting custody of a child to defendant, when she remarried and established a domicile here, the Ohio court had no further jurisdiction to modify its original decree so as to award custody to plaintiff, but that the Oregon court had jurisdiction to deny plaintiff's demand for delivery of the child and was not required to give full faith and credit to that order by the Ohio court.

stated.[4] Since our decision in *Lorenz* in 1952, however, that view has been the subject of increasing criticism.[5]

Perhaps the primary criticism has been that the underlying premise of the traditional "domicile" concept of jurisdiction in child custody cases is erroneous in that custody is not simply a "status."[6] If a child is awarded to his mother he is still his father's child; he still has a right of inheritance from his father and his father still owes the child a duty of support. Thus, it is contended that the principal relationship between the custodian and the child is physical, not legal, and is temporary in nature, its only attribute of "status" being that it cannot be changed unilaterally.[7]

The "domicile" theory is further criticized on the ground that in applying technical rules of domicile, courts often find a domicile that is far removed both logically and factually from the child's actual abode, as well as a forum which has minimal concern with the welfare of the child.[8] This criticism is obviously accentuated by today's highly mobile society.

---

[4] See also 2 Beale, Conflict of Laws 717-8, § 144.3 (1935).

As early as 1944, however, this traditional view was strongly criticized in a leading article by Stansbury, Custody and Maintenance Across State Lines, 10 Law & Contemp Prob 819, 828 (1944). See also Stumberg, The Status of Children in the Conflict of Laws, 8 U Chi L Rev 42, 55 (1940), and Sampsell v. Superior Court, 32 Cal 2d 763, 197 P2d 739 (1948).

[5] See, among others: Leflar, American Conflicts Law 586-87, § 245 (1968); Ehrenzweig on Conflict of Laws 281-82, § 86 (1962); Stumberg, Principles of Conflict of Laws (3d ed 1963) 321; Clark, Law of Domestic Relations 319-20, § 11.5 (1968); Currie, Selected Essays on Conflicts of Laws 675 (1963). See also Comment, 7 Will L J 498, 507 (1971).

[6] See Stansbury, *supra* note 4, at 820, and Stumberg, *supra* note 4, at 55.

[7] Stansbury, *supra* note 4, at 820.

[8] *Id.,* at 821. See also Comment, 7 Will L J 498 (1971).

In addition, the United States Supreme Court in *May v. Anderson,* 345 US 528, 73 S Ct 840, 97 L ed 1221 (1953), held (345 US at 533-34) that at least where a state court does not have personal jurisdiction over the defendant parent, the fact that the child is domiciled in the state of the forum does not give that court requisite jurisdiction to deprive the defendant of his right to custody of the child.[⊛] This decision obviously conflicts to at least some substantial degree with the previous decision of this court in *Lorenz.*

. It must also be recognized that application of the "domicile" theory in child custody proceedings as adopted in *Lorenz* can produce anomalous results. Thus, while the court in *Lorenz* recognized (at 365) that normally the paramount issue in a custody proceeding is the child's welfare, the effect of that decision is to hold that the court is powerless to consider the best interests of young children even though they may have lived in Oregon with their mother in excellent home surroundings for several years and after nearly all ties with their former home have been severed.

The converse effect of the rule of "domicile," as adopted in *Lorenz,* is illustrated by our subsequent decision in *Godfrey v. Godfrey,* 228 Or 228, 364 P2d 620 (1961). In that case an Oregon court had granted the plaintiff custody pendente lite. A few days later she moved with the child to Illinois and continued to reside there. About a year later the Oregon court granted her a divorce and custody of the child. Approximately one year later the Oregon court modified its custody terms relating to defendant's rights of visitation. In response to defendant's contention that

---

[⊛] This case, however, was decided by a divided court and has also been subject to considerable criticism. See note 16 *infra.*

the Oregon court lacked jurisdiction to do so, we held (at 234) that under the rule of *Lorenz* and in the absence of evidence to show that plaintiff intended to make Illinois her domicile, it followed that plaintiff and her children were still domiciled in Oregon.

In apparent recognition of the deficiencies of the domicile theory as a basis for exclusive jurisdiction, several courts and legal writers, including the writers of the Restatement of Conflicts, have repudiated it. The courts and legal writers are not in accord, however, as to nature of or basis for a substitute rule for application in child custody cases.

## 2. *Other theories of jurisdiction in child custody cases.*

Several theories have been advanced with respect to the correct basis for jurisdiction in child custody cases, in addition to the traditional theory (as adopted in *Lorenz*) that child custody is a matter of status and that the only court with jurisdiction in such a case is a court of the state in which the child has its "domicile."

According to some, the physical presence of the child provides the primary basis for jurisdiction because the state in which the child is physically present is the state with the greatest interest in its welfare and because of the doctrine of "parens patriae."[10] Personal

---

[10] Among others, see Goodrich & Scoles, Conflict of Laws (4th ed 1964) 271-2, § 136; Comment, 64 W Va L Rev 427, 428 (1962); Note, 49 Iowa L Rev 1178, 1179-80 (1964); and Comment, 5 Kan L Rev 77, 78 (1956). See also Ehrenzweig, *supra* note 5, at 282, and Clark, *supra* note 5, at 321. In addition, see opinions by Cardozo, J., in Finlay v. Finlay, 240 NY 429, 431, 148 NE 624, 625 (1925), and Traynor, J., in Sampsell v. Superior Court, 32 Cal 2d 763, 197 P2d 739 (1948), and dissenting opinion by Frankfurter, J., in Kovacs v. Brewer, 356 US 604, 614, 78 S Ct 963, 2 L ed 2d 1008 (1958).

jurisdiction over both parents is also often recognized as a proper, if not necessary, basis for jurisdiction in child custody cases.[⊕] According to another writer, the only state with jurisdiction in child custody cases should be the "home state" or "established home," to be determined by consideration of various criteria.[⊕]

The influence of these and other theories is reflected in the revised rule as adopted in 1969 by the American Law Institute and as set forth in 1 Restatement 237, Conflicts 2d § 79, as follows:

"A state has power to exercise judicial jurisdiction to determine the custody, or to appoint a guardian, of the person of a child or adult

"(a) who is domiciled in the state, or

"(b) who is present in the state, or

---

[⊕] Leflar, *supra* note 5, at 586-87; Comment, 64 W Va L Rev 427, 429 (1962); and Note, 49 Iowa L Rev 1178, 1180 (1964). See also Clark, *supra* note 5, at 321.

It should also be noted that May v. Anderson, 345 US 528, 73 S Ct 840, 97 L ed 1221 (1953), can be read as holding that personal jurisdiction over the defendant is a pre-requisite to the forum's jurisdiction in child custody cases.

[⊕] Ratner, Child Custody in a Federal System, 62 Mich L Rev 795 (1964), and Ratner, Legislative Resolution of the Interstate Child Custody Problem, 38 S Cal L Rev 183 (1965). Although Prof. Ratner's theory is susceptible of judicial adoption, it was developed primarily as a legislative, rather than a judicial proposal. The Committee on Child Custody of the Family Law Section of the American Bar Association requested that Prof. Ratner draft a proposed uniform law based on this article. That proposal, known as the Uniform Child Custody Jurisdiction Act, was subsequently approved by the ABA and also by the National Conference of Commissioners on Uniform State Laws. The Family and Juvenile Law Committee and the Uniform State Laws Committee of the Oregon State Bar recommended in 1970 that this proposal be adopted by the legislature. Or State Bar Comm Rep 93, 265-6 (1970). The 1971 Legislature did not adopt that proposed statute. However, the Legislative Interim Juvenile Code Committee, in its report of October 1972, has recommended that the 1973 Legislature again consider adoption of the proposed Uniform Act. For further discussion of the proposed Uniform Act, see Comment, 7 Will L J 498 (1971).

"(c) who is neither domiciled nor present in the state, if the controversy is between two or more persons who are personally subject to the jurisdiction of the state."[13]

It will be noted that the so-called "Restatement Rule," proceeds on the theory that there may be concurrent jurisdiction in child custody cases by the court of two, or even three, states, each of which may have a different interest in such a case.[14]

### 3. *Full faith and credit in child custody cases.*

Closely related to the problem of the jurisdiction in child custody cases is the problem of whether an order awarding custody of a child is entitled to full faith and credit by the courts of other states. In Oregon, under *Lorenz* (at 371), the rule has been that if a child is still "domiciled" in the state in which an order or decree of custody was entered, that order or decree must be given full faith and credit regardless of change in circumstances or any other facts. Again, this is a problem subject to considerable discussion.[15]

---

[13] This statement of the rule also appears to be based, at least in part, upon the opinion by Justice Traynor in Sampsell v. Superior Court, *supra* note 10.

[14] As stated in 1 Restatement 237, Conflicts 2d § 79, Comment a:

"The subject of jurisdiction over custody and guardianship is made complex by the different interests involved, and by the number of states which may be concerned. First, there is the welfare of the child, which is of paramount importance. Second, there is the interest of the state of the child's domicil and, if he is absent from that state at the time of suit, there is the interest of the state where he happens to be physically present at the time. Third, there are the interests of those (normally the parents) who are disputing among themselves for the child's custody.

"The existence of these conflicting interests has given rise to three different bases of jurisdiction. * * *"

[15] See, among others: Ratner, Child Custody in a Federal Sys-

■ Much of the confusion on this subject would appear to be attributable to the fact that because the welfare of the child subject to an order or decree of custody is the paramount consideration, an order or decree awarding custody of a child is not a "final" judgment, but is always subject to modification by the court. This being true, it now appears that insofar as full faith and credit is concerned (as distinguished from jurisdiction) recent decisions by the Supreme Court of the United States make it clear that an order or decree by the court of one state awarding custody of a child is no more binding upon the courts of other states than it is upon the court which originally issued such an order or decree.⑨ If this is correct, and if the original order or decree of custody is subject to change

---

tem, 62 Mich L Rev 795; Leflar, *supra* note 5, at 588-89, § 246; Ehrenzweig, Interstate Recognition of Custody Decrees, 51 Mich L Rev 345 (1953); Comment, Conflicting Custody Decrees, In Whose Best Interests?, 7 Duquesne L Rev 262, 268 (1968-69); and Goodrich & Soles, *supra* note 10, at 272-74, § 136.

⑩ Restatement, *supra* note 14, at 238-39, Comment c, citing New York ex rel Halvey v. Halvey, 330 US 610, 614, 67 S Ct 903, 91 L ed 1133 (1947). See also May v. Anderson, *supra* note 11; Kovacs v. Brewer, *supra* note 10; and Ford v. Ford, 371 US 187, 83 S Ct 273, 9 L ed 2d 240 (1962).

These decisions by the United States Supreme Court have also been subject to considerable criticism and it has been stated, among other things, that they are inconclusive as to the extent, if any, to which a child custody decree is entitled to full faith and credit. Restatement, *supra* note 14, at 241, Reporters Note re Comment c. See also Currie, Full Faith and Credit, Chiefly to Judgments, The Supreme Court Review 89, 109 (1964); Hazard, May v. Anderson: Preamble to Family Law Chaos, 45 Va L Rev 379 (1959); and Leflar, *supra* note 5, at 588.

Indeed, some courts and legal writers would hold that no full faith and credit is due to any child custody decree and that because the welfare of the child is the paramount consideration, a court, as "parens patriae," can act on behalf of the child irrespective of any prior adjudication. This is often termed the "Kansas rule." See Kansas cases as cited in Ehrenzweig, *supra* note 5, at 290.

in that court upon a showing of a subsequent change of circumstances, it would follow that the courts of other states are not required to give binding effect to the original order or decree, but may also modify or change it upon a showing of the same facts that would permit its modification or change by the court of its original entry.

The principal and obvious criticism of a rule that the original order or decree of custody need not be given full faith and credit by the courts of other states, at least when coupled with a rule that would recognize that two or more states may have concurrent jurisdiction in child custody cases, is that such a rule would not only reject the need for certainty and stability in this troubled field of the law, but would encourage "legal kidnapping" and "forum shopping."[17]

It must be remembered, however, that even though a court may have jurisdiction in a child custody case, despite the existence of a custody order or decree by a court in another state and even though such an order or decree is not necessarily entitled to full faith and credit, it does not follow that the court must exercise such jurisdiction and refuse to give either full faith and credit or recognition by comity to the orginal custody order or decree.[18] Thus, if it appears that the plaintiff in a child custody proceeding has "kidnapped" the child from another state or brought the child into the state in defiance of a valid custody order or decree, such a plaintiff may be denied relief by application of the so-called "clean hands"

[17] See Ehrenzweig, *supra* note 5, at 293. See also Ratner, *supra* note 15, at 813; and Walther, The Uniform Child Custody Jurisdiction Act, 54 Marq L Rev 161, 164 (1971).

[18] Stansbury, *supra* note 4, at 831, and Ratner, *supra* note 15, at 808. See also authorities cited note 16, *supra.*

doctrine.[19] This, it is argued, will allow a court to act in the best interest of the child, which should be the paramount consideration, and, at the same time, eliminate the principal objection to such a rule.[20]

In the light of this background, we now turn to a consideration of the facts of this case.

### 4. *The trial court has jurisdiction in this case.*

■ We must reject defendant's contention that the Alabama court had no jurisdiction to enter a divorce decree under which custody was awarded to the father of the children (the plaintiff in this proceeding). That divorce proceeding was instituted by defendant as the plaintiff in that case and the fact that the children then lived with her and were later moved by her to Oregon, allegedly with the consent of her husband, did not deprive the Alabama court of jurisdiction to enter that decree. Neither did her inability to attend the trial or the failure of her attorney to appear at the trial on her behalf deprive the court of such jurisdiction.

■ Nevertheless, because both the plaintiff in this case, as the father, and defendant, as the mother, have submitted themselves to the jurisdiction of this court and because the children are also physically present in Oregon, we hold that the trial court has jurisdiction in this case.

---

[19] Ehrenzweig, *supra* note 15, at 357-74.

[20] On the other hand, it is contended that the "clean hands" doctrine cannot rehabilitate the objection that a nonrecognition rule encourages abduction because the exception almost "swallows" the rule and because the exception is contrary to the rationale of the rule that the state's interest in the welfare of the child justifies a de novo determination. Ratner, *supra* note 15, at 814.

In so holding we need not, for the purposes of this case, choose between the various theories of jurisdiction in child custody cases, whether concurrent or otherwise, except to hold that when both parents of a child are personally subject to the jurisdiction of the courts of Oregon and the child is also present in Oregon, the courts of Oregon have jurisdiction in child custody proceedings. Another reason for thus limiting the scope of this decision at this time is that this is a subject which may later be covered by legislation.[21]

We also hold, with reference to the closely related question of full faith and credit, that where, in such a case, the child or children involved have been brought into Oregon by one parent with the consent of the other parent and have been in Oregon for some time, as is alleged in this case, such facts, if true, are sufficient to negative the contention of "legal kidnapping" or "forum shopping." Accordingly, we hold that in this case the trial court is not required to give more full faith and credit to the custody order by the court of Alabama than it is entitled to receive in that state if, upon a hearing of the evidence, the court finds that such alleged facts are true, as well as other facts which would permit the modification of such a custody order in the courts of that state.[22]

In this case it appears that in Alabama, as in Oregon, an order or decree of child custody is subject to change upon a showing of either (a) a material

[21] See note 12, *supra*.

[22] In so holding, for the purposes of this case, we do not mean to hold that these alleged facts must always be alleged and proved as a basis for refusing to give full faith and credit to the custody decree of another state. Neither do we necessarily adopt the "unclean hands" doctrine as a bar to relief in all child custody cases.

change in circumstances since the entry of such an order or decree or (b) the existence of facts at that time which were not brought to the attention of the court or considered by it in its award of custody.[20] In both states, the welfare of the child is of paramount consideration in such a proceeding, depending upon the facts and circumstances of each case.[21]

Both parties in this case, however, as well as the trial judge, proceeded on the assumption that in view of our previous decision in *Lorenz* the only question to be decided was whether the Alabama court still had jurisdiction over the custody of the children and whether the trial court had jurisdiction in this case. Thus, it appears that the basis for the decision by the trial court was that it had no such jurisdiction, in accordance with the rule as stated by our previous decision in *Lorenz.*

For the reasons set forth in this opinion, however, we now overrule *Lorenz,* as well as the subsequent cases following the rule as adopted in that case,[22] to the extent that *Lorenz* holds that the Oregon courts have no jurisdiction in such a case.

Accordingly, we hold that the trial court has jurisdiction in this case. We must therefore remand this case to the trial court for further proceedings.

---

[20] Alabama cases so holding include: Sparks v. Sparks, 249 Ala 352, 31 So 2d 313 (1947); Statham v. Statham, 282 Ala 322, 211 So 2d 456, 460 (1968); and Stephens v. Stephens, 47 Ala App 396, 255 So 2d 338, 340-1 (1971).

Oregon cases so holding include: Flanagan v. Flanagan, 195 Or 611, 619, 247 P2d 212 (1952), and Cripe v. Cripe, 186 Or 502, 506, 207 P2d 1049 (1949).

[21] See Blankenship v. Blankenship, 248 Ala 489, 28 So 2d 409 (1946), and Tingen v. Tingen, 251 Or 458, 459, 446 P2d 185 (1968).

[22] See note 3, *supra.*

### 5. *Factors to be considered in deciding whether to "exercise jurisdiction" in this case.*

■ It is commonly said that although a court may have jurisdiction in a child custody case involving a previous custody order by a court of another state, it should be reluctant to "exercise jurisdiction" in such a case unless and until it is satisfied that to do so would be "in the best interests of the child," based upon consideration of various facts and circumstances. Such a statement, however, is subject to possible misunderstanding.

What the trial court actually undertakes to do first in such a case is to decide, as a preliminary matter, whether it should proceed to hear the merits of the case (i.e., whether or not to modify the previous order of custody) or whether it should decline to hear the merits of the case and thereby give recognition to the previous custody order, either as a matter of full faith and credit or as a matter of comity. Where, for the purpose of making that preliminary decision, the trial court considers the facts and circumstances of the case it is "exercising jurisdiction" within the usual meaning of that term. And where, at that stage of the proceeding, the trial court considers "the best interests of the child," it does so, not for the purpose of deciding whether the child will be better off with the mother or the father, but for the limited purpose of deciding whether it is in a better position than the original court to decide the merits of the case and thus serve the best interests of the child. In this sense, and for this purpose, we shall now proceed to consider the question whether the trial court should "exercise its jurisdiction" in this case.

Because we have overruled *Lorenz* and because,

upon abandonment of such a fixed and rigid rule, the decision by a trial court whether or not to "exercise jurisdiction" in a child custody case involving a custody order or decree of another state should not be left to the exercise of uncontrolled judicial discretion, we hold that the following factors should be considered by the trial court in deciding whether to "exercise its jurisdiction" in this case:

(a) Before undertaking to "exercise jurisdiction" in a child custody proceeding involving a previous custody order or decree by a court in another state, the Oregon court should consider whether a custody proceeding involving the same children is pending in the courts of another state or whether the courts of another state have declined to "exercise jurisdiction" in such a proceeding;

(b) In deciding whether to "exercise jurisdiction" in such a case the present domicile or residence of both parents must also be considered, as well as that of the children, together with any other facts that may be relevant in determining whether the court of another state may have a more substantial interest in the child's welfare, both presently and in the foreseeable future, and whether such court may be in a better position to protect the child's welfare;

(c) Because these considerations cannot be properly weighed and evaluated in the absence of access to substantial evidence relating to such facts and circumstances, the availability of witnesses and other evidence in the Oregon trial court, as compared with such availability in the court of another state, is also a factor to be considered;

(d) In addition, consideration should be given to the convenience of the forum in Oregon, compared

with that of another state, including, but not limited, to the availability of compulsory process, the expense of producing witnesses, and other expenses involved in the trial of such a proceeding;

■ (e) In the event that no alternative forum is available to the plaintiff in the courts of another state, jurisdiction should ordinarily be "exercised" if required in the interest of the welfare of the child.

By listing the foregoing factors for consideration by the trial court upon the remanding of this case for further proceedings, we do not mean to imply that in other cases there may not be other factors which may also be properly considered, depending upon the facts of such a case.

6. *Defendant may move for leave to file amended return.*

■ In remanding this case to the trial court, we also recognize that the order of the trial court recites that plaintiff demurred in open court to defendant's return; that the trial court sustained that demurrer, and that defendant refused to plead further, but represented to the court "that there were no additional facts not set forth in the return." The order also recites that the court "proceeded to hear evidence in support of or against the restraint and to dispose of the parties as law and justice may require in accordance with ORS 34.640 * * *."

Apparently, however, the only evidence received was a copy of the Alabama custody order which, under the rule of *Lorenz*, required the trial court to hold that it had no jurisdiction.

It also appears upon examination of the tran-

script of the hearing that the only "representation" by defendant's counsel relating to the existence or nonexistence of other facts was as follows:

"Your Honor, we cannot plead abandonment or neglect. We can only plead the special circumstances that have already been raised under the matter of due process of law, the absence of counsel, the fact that matters which could have been raised in Alabama as a matter of fact could not have under the facts of this case."

"Abandonment or neglect" was recognized by *Lorenz* as a possible exception to the rule of that case. As we read this statement by counsel, in the light of other statements by him at that hearing, what he did was to concede that the rule of *Lorenz* was binding on the trial court and that there were no facts which would enable him to bring defendant under any exception to that rule or to escape the application of that rule other than to urge "special circumstances" which deprived her of an opportunity to be heard by the Alabama court and thereby deprived it of jurisdiction to enter the original decree of custody.[29]

On the other hand, it was made clear in *Lorenz* that neither change of circumstances nor the existence of previous facts not called to the attention of the Alabama court would provide an exception to the rule of that case. Accordingly, defendant was not required by that rule to allege or offer proof of such facts in her return in this case.

Because, however, we now overrule *Lorenz* and do not construe the statement of defendant's counsel as a representation that no such facts existed, and

---

[29] As previously stated, that contention was not well taken and was properly rejected by the trial court.

because defendant appears to have acted in good faith in standing on her demurrer, we remand this case to the trial court with instructions that defendant may file a motion for leave to file an amended return, which shall be tendered with that motion and in which defendant may allege such additional facts, if any, which defendant may believe to entitle her to relief under the views as expressed in this opinion. Cf. *Adams v. Mc-Mickle,* 176 Or 459, 467, 158 P2d 648 (1945), *Coblentz v. State Ind. Acc. Com.,* 203 Or 258, 266-67, 279 P2d 503 (1955), and *Spencer v. B. P. John Furniture Co.,* 255 Or 359, 366, 467 P2d 429 (1970).

Reversed and remanded.