MOORE, *Respondent,*
v.
MOORE, *Appellant.*
(No. 76779, CA 4971)

STATE ex rel MOORE, *Appellant,*
v.
McCALL, formerly MOORE, *Respondent.*
(No. 92233, CA 4976)

546 P2d 1104

*James W. McClurg,* Portland, argued the cause for appellant. With him on the brief were Kennedy & King, Portland.

*James C. Tait,* Oregon City, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

**FORT, J.**

These two cases, consolidated for appeal, involve a single question of child custody in which both Oregon and Washington have assumed jurisdiction and currently entered, in proceedings in each state, decrees which conflict with each other. One case was part of an Oregon divorce proceeding. The other sought enforcement of a subsequent Washington custody order under the Uniform Child Custody Jurisdiction Act, ORS 109.700 to 109.930. The final Oregon proceeding produced an order of the circuit court in which it refused to set aside a previous order of January 31, 1975, modifying its earlier divorce decree with respect to the custody of a minor child. It also dismissed the petition seeking enforcement of the custodial orders of the Washington court. The father appeals from each order. For an understanding of the issues presented, a history of these complicated proceedings is necessary.

The parties were divorced in Oregon on January 3, 1972, nunc pro tunc December 10, 1971. Their one child, born August 30, 1970, was, pursuant to an order of the juvenile court, living with her paternal grandmother at that time because of a finding of serious abuse of the child by the mother. The divorce decree continued custody in the grandmother, and the juvenile proceeding was terminated. On October 24, 1972, after a hearing, the court modified the divorce decree and granted custody to the father. Thereafter he moved with the child and his second wife to Longview, Washington, where he still lives. The mother has remained an Oregon resident.

On January 8, 1975, respondent mother filed a motion to modify the order of October 24, 1972, by awarding the custody to her. At that time both the father and the child were residents of and domiciled within the state of Washington, and had been for nearly two years. On January 15, citation to appear on January 27 in the Oregon court was served on the father. On advice of Washington counsel he did not

[ 675 ]

appear, and on January 31, 1975, less than 20 days after service of citation, the court entered its order awarding custody of the child to the mother.

When contacted by the mother in Washington, the father refused to deliver the child to her. Instead, on March 4, 1975, he filed a proceeding in the Superior Court of the State of Washington to restrain the mother from taking the child from Washington, and petitioned for modification of the Oregon divorce decree prohibiting the mother from taking the child out of Washington. The mother appeared and responded by filing her own petition for custody in the Washington court. On March 14 the parties in the Washington proceeding filed an agreed order for visitation which allowed the mother visitation rights two weekends each month and allowed her to take the child from Washington for that purpose.[1]

On June 8, 1975, the mother refused to return the child to Washington after a weekend visitation. A bench warrant for her arrest was issued by the Washington court on June 23. So far as appears from this record that warrant remains outstanding.

On July 1, 1975, the Washington court issued its decree finding that it had personal jurisdiction over

[1]From Agreed Order for Visitation:

"This matter came on this day for hearing upon Plaintiff's application for visitation pending a hearing on the question of permanent care, custody and control of RITA JO MOORE, the Plaintiff, Henry W. Moore, being represented by William R. Trippett and the Defendant, Anita McCall (formerly Moore) being represented by John A. Barlow. The parties having agreed to the entry of this order, it is therefore ORDERED:

"1. That Defendant Anita McCall have weekend visitation with Rita Jo Moore on the second and fourth weekends of each month, beginning March 15, 1975, from 9:00 a.m. Saturday until Sunday evening.

"2. That Defendant may take Rita outside the State of Washington for said visitation, but that she will be in contempt of Court if she fails to return Rita to the State of Washington at the time specified above.

"VIOLATION OF THIS ORDER WITH ACTUAL NOTICE OF ITS TERMS IS A CRIMINAL OFFENSE UNDER CHAPTER 26.09 RCW AND IS ALSO SUBJECT TO CIVIL CONTEMPT PROCEEDINGS.

"Dated this 14th day of March, 1975."

the child because of her 18-month residence in Washington, and over the mother because of her appearance and her petition and her consent to the agreed order of visitation. The court continued custody in the father and limited visitation by the mother to once a month in the home of the father until further order of the court.

On June 10, 1975, the father filed a motion for the enforcement of the Washington custody order by the Oregon circuit court. On June 17 he filed a motion to vacate the January 31 Oregon order giving custody to the mother. On July 7 he filed an amended motion seeking to vacate the January 31, 1975, Oregon order contending (1) the Oregon court no longer had jurisdiction over the custody of the child, (2) the service of citation should be quashed because the father was given insufficient time to appear, and (3) the default order was entered as a result of mistake, inadvertence, surprise and/or excusable neglect. To that motion were appended as exhibits relevant portions of the Washington proceedings.

On July 22, 1975, nunc pro tunc July 14, 1975, the Clackamas County circuit court entered its orders denying the father's motions in their entirety. Its effect, of course, was to leave the child in the physical and legal custody of the mother here in Oregon. This appeal resulted.

As is apparent from the foregoing summary of these cases, the essential question is whether the Washington court or the Oregon court should have determined whether the father or the mother should have custody of the child. Several recent authorities assist us in its resolution—both case law and statutory.

In *Hawkins v. Hawkins,* 264 Or 221, 504 P2d 709 (1972), the court discussed at length the guiding considerations which must underlie both jurisdiction of an Oregon court in a child custody dispute and the circumstances under which it is appropriate for an

Oregon court to exercise that jurisdiction. In the course of that opinion the court said:

> "Nevertheless, because both the plaintiff in this case, as the father, and defendant, as the mother, have submitted themselves to the jurisdiction of this court and because the children are also physically present in Oregon, we hold that the trial court has jurisdiction in this case." 264 Or at 235.

The rationale in *Hawkins* has equal application here in the reverse situation except that here under appropriate circumstances it would apply to uphold the exercise of jurisdiction by the Washington court.

■ Respondent contends that the Oregon court had jurisdiction to modify its own divorce decree. We agree. ORS 107.135(1)(a). That it has the power, however, does not, under the *Hawkins* rationale, necessarily mean that it should exercise it.

■ A further problem of process is presented here. ORS 107.135(1)(a) provides:

> "The court has the power at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and *after service of notice on the other party in the manner provided by law for service of a summons, to:*" (emphasis supplied,)

modify the custody portion of the decree. Valid exercise of that power, then, is dependent upon proper service. ORS 15.110. It is conceded that here the default order of January 31, 1975, awarding custody to the mother, was entered less than 20 days after the service upon the father in Washington of the required citation. Respondent contends that a certain letter constituted sufficient reason to believe the father would not appear so as to justify the Oregon court in proceeding to modify the decree. That was the letter received by her Oregon attorney from a Washington attorney advising the Oregon lawyer that the Washington attorney had told the father that the Oregon court no longer had jurisdiction since both child and father, who then had lawful custody pursuant to the October

24, 1972 order of the Oregon court, were Washington residents. We disagree. We note first that the letter was not written by an attorney authorized to practice law in Oregon and was not even sent to the Oregon court. ORS 9.330 therefore has no application here. ORS 9.160. Certainly such a letter constitutes neither a legal appearance, notification of any kind to the court, nor a valid waiver of time by the nonresident father. As mentioned above, one of the matters urged by the father in the Oregon divorce court proceeding was the vacation of its order of January 31, 1975. During argument on the motion to vacate, the court's attention was clearly drawn to this obvious deficiency in the record (ORS 107.135(1), 15.110(2)). We cannot tell from this record whether prior to the entry of the modification order of January 31, its existence was called to the attention of the trial judge who granted that order.[2] We must, however, assume that he was familiar with the record before him. That showed affirmatively that the date appellant was directed to appear was only 12 days after service upon him, some 16 days less than the minimum of 28 days required by ORS 15.110(3), and indeed only 19 days after the citation itself was issued by the clerk of the court.

Whether the citation therefore was void on its face, and thus also the order entered pursuant to its purported authority (see *Hunsaker v. Coffin,* 2 Or 107 (1864), and *White v. Johnson,* 27 Or 282, 40 P 511, 50 Am St R 726 (1895)), in the view we take of this case we do not find it necessary to decide.

The trial judge, if we correctly understand his remarks,[3] concluded that since appellant, and perhaps

[2] We note that the judge who granted the order of January 31, 1975, did not decide either of the matters here appealed from.

[3] "THE COURT: * * * And in the Washington proceedings although he already had the custody of the child up until January of this year he has gotten some bad advice or maybe she got some bad advice from the Washington proceeding. And that is not actually the fault of either one of them. But that can't be the basis of our decision under our court's rules and our laws because an attorney gives them bad advice.

"* * * * *

"* * * But we can't set it aside. I can't legally, Mr. McClurg, set it aside, that default on the state of the record here. * * *"

respondent, received "bad legal advice" in Washington, it could not as a matter of law vacate and set aside the default order of January 31. The granting of a motion to set aside a default order is discretionary under ORS 18.160,[4] and is addressed to the sound discretion of the trial judge. *Day v. Day,* 226 Or 499, 359 P2d 538 (1961). It is a power which under appropriate circumstances the trial judge also has a right to exercise upon his own motion. *Milton v. Hare,* 130 Or 590, 280 P 511 (1929).

■■ We do know from the statement of respondent's counsel that the letter was received by him on January 28, which was one day after the court heard, considered, and apparently orally granted, the motion of respondent wife to modify the decree. Although the actual order was not signed and filed until January 31, it appears from its face that it was based solely on the January 27 hearing. The motion to vacate also was based on ORS 18.160. In *Miller v. Miller,* 228 Or 301, 365 P2d 86 (1961), a divorce case, the Supreme Court said:

> "ORS 18.160 gives the court discretionary power to relieve a party from a decree taken against him by mistake, inadvertence, surprise, or excusable neglect within one year. This statute has been liberally construed in default cases in order to give a party a day in court. * * *" 228 Or at 307.

We do not have the transcript of the testimony, if any, which was presented at the January 27 hearing leading to the January 31 order changing the custody, but it is apparent from what transcript we do have that the hearing was in the nature of a default. We conclude that the court erred first in concluding as a matter of law it lacked authority to vacate the challenged order, and second that in the proper exercise of

---

[4] ORS 18.160:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

its discretion upon the foregoing facts it should have vacated it.

At the time respondent mother filed her motion in the Oregon court on January 7, 1975, the father had custody by the order of October 24, 1972. Both he and the child were then and for approximately two years had been domiciled within and residents of Washington.

In 1973 Oregon adopted the Uniform Child Custody Jurisdiction Act. ORS 109.700 to 109.930. We discussed this Act at length in certain particulars in *Brooks v. Brooks,* 20 Or App 43, 530 P2d 547, Sup Ct *review denied* (1975), and will not repeat it here. Significant portions of that Act, as well as *Hawkins,* are devoted to when a court having jurisdiction of a child custody matter *should,* as distinguished from *can,* decline to exercise that power. Those portions of *Hawkins* which deal with that problem are set out at length by this court in *Gatchell v. Rice,* 16 Or App 222, 517 P2d 1198 (1974), including a description of the steps to be taken in making that vitally important preliminary decision before hearing testimony on the merits of a proposed change of custody. We see no reason to repeat them here. ORS 109.720, when compared with the specific factors set forth in *Hawkins,* 264 Or at 239-40, clearly shows the intent of the Oregon legislature in adopting the Uniform Act was to implement the philosophy and to flesh out and clarify the rules laid down by *Hawkins* which are to be applied in determining whether the best interests of the child would be better served by the court's refusing in a particular case to exercise its jurisdiction, and thus to defer to another jurisdiction better able under the described tests to protect the best interests of the child.

Here the court in entering its order so far as this record reveals did not consider the guidelines of ORS 109.720(1)(c), (d) and (e) or those of *Hawkins.* Had it done so, even though no Washington proceeding had

yet been started, it might for example have concluded to refuse for a reasonable period to exercise jurisdiction to allow the institution of an appropriate custodial proceeding by either parent in Washington. The failure of Washington to have adopted the Uniform Child Custody Jurisdiction Act, as the briefs here advise us, is not a barrier. *Ehrich v. Ehrich,* 7 Wash App 275, 499 P2d 216 (1972). After all, *Hawkins* came down in this state before the adoption of the Uniform Child Custody Jurisdiction Act. Accordingly, we reverse the order refusing to set aside the default decree of January 31, 1975, and remand this matter to the circuit court to determine whether or not it should refuse to exercise its jurisdiction under ORS 107.135(1)(a). Should it determine to exercise that jurisdiction and conduct a hearing on the change of custody motion of the mother, it follows that the father in such a hearing shall have the right to appear and present evidence and that the burden of establishing sufficient change of conditions to warrant in the best interests of the child modifying the custody order of October 24, 1972, in favor of the father shall be upon the mother. If the court concludes after hearing that under the guidelines of *Hawkins* and of the Uniform Act it should decline to exercise jurisdiction, then the child should be forthwith returned to the custody of the father in the state of Washington in conformity with the July 1975 order of the Washington court. Finally, pending determination of that issue the order dismissing the father's petition for enforcement of the Washington decree is also set aside.

Reversed and remanded.

**SCHWAB, C. J.,** dissenting.

The majority's disposition of this case is not completely clear to me. What is clear to me is that the disposition should be deference to the substantially superior claim to jurisdiction of the Washington court.

The father and child are and were at all material

times residents of the state of Washington. The mother submitted to the jurisdiction of the Washington court to adjudicate the question of the child's custody. The only basis for subsequently presenting the same custody question to an Oregon court is that the mother, in flagrant violation of the order of the Washington court, has removed the child from that jurisdiction.

Under the standards established in *Hawkins v. Hawkins,* 264 Or 221, 504 P2d 709 (1972), and previously applied by us in *Gatchell v. Rice,* 16 Or App 22, 517 P2d 1198 (1974), I think that further proceedings relative to the child's custody should take place in Washington. Moreover, I think the record we already have is sufficient to make that determination, and realistically I doubt that anything relevant can be added at the hearing on remand contemplated by the majority.

I respectfully dissent.