# FORD *v.* FORD.

No. 63.   Argued November 15, 1962.—Decided December 10, 1962.

*W. Francis Marion* argued the cause for petitioner. With him on the briefs was *O. G. Calhoun.*

*Wesley M. Walker* argued the cause for respondent. With him on the briefs were *John S. Davenport III* and *Angus H. Macaulay, Jr.*

MR. JUSTICE BLACK delivered the opinion of the Court.

This is a controversy between a husband and wife over the custody of their three young children which raises questions under the Full Faith and Credit Clause of the

United States Constitution.[1]  Their first litigation was in 1959 when the husband filed in the Richmond Virginia Law and Equity Court a petition for habeas corpus alleging that the wife had the children but was not a suitable person to keep them and asking that they be produced before the court and custody awarded to him.  The wife promptly answered, alleging that she was the proper person to have custody of the children and asking that the writ be dismissed.  Thereafter negotiations took place between the parents, both being represented by counsel, and they agreed that the husband was, with minor exceptions, to have custody of the children during the school year and the wife was to have custody during summer vacation and other holidays.  When notified of this agreement, the Richmond court entered the following order:

> "It being represented to the court by counsel that the parties hereto have agreed concerning the custody of the infant children, it is ordered that this case be dismissed."

Some nine months later, August 10, 1960, while the three children were with their mother in Greenville, South Carolina, she began this suit for full custody in the Greenville County Juvenile and Domestic Relations Court, again alleging that she was the proper person to have custody and that the husband was not.  Service was had upon the husband, who answered, charging that for

---

[1] U. S. Const., Art. IV, § 1, states:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."  The statute passed under this authority is found at 28 U. S. C. § 1738.

reasons set out the mother was not fit to have custody of the children and asserting that he was. He also set up as a defense that

"... Plaintiff has violated and breached the agreement made between the parties by and with their respective legal counsel and further violated the Order of the Court of record in Richmond, Virginia that was duly issued and based upon said agreement."

After hearing testimony from 11 witnesses including the husband and wife, the trial judge found as a fact that while both the father and mother were fit persons to have the children, it was "to the best interest of the children that the mother have custody and control." The judge also rejected the husband's argument that the order of dismissal in the Virginia court should be treated as *res judicata* of the issue of fitness before the South Carolina court.

On appeal the Court of Common Pleas, like the judge of the juvenile court, held that under the law of South Carolina the interests of the children were "paramount" and that it was their welfare which had to be protected. It decided that, while both parents would be suitable custodians, the best interests of the children required that the wife have custody during the school months and the husband during the other parts of the year, in effect inverting the arrangement previously made in the parents' agreement. In rejecting the husband's contention that South Carolina courts should be bound by the dismissal of the habeas corpus proceedings in Virginia which was based on the parents' agreement, the court said:

"To hold that the custody of these three children was fully and finally determined in Richmond, Virginia, by the agreement reached between the plain-

tiff's attorneys and the defendant's attorneys would be unfair to the children and too harsh a rule to follow."

On appeal the Supreme Court of South Carolina reversed. 239 S. C. 305, 123 S. E. 2d 33 (1961). That court, after a review of certain Virginia cases, said:

"If the respondent [the wife] here had instituted in the Courts of Virginia the action commenced by her in the Courts of this State, the appellant could have successfully interposed a plea of *res judicata* as a defense to said action. Since the judgment entered in the Virginia Court by agreement or consent is *res judicata* in that State, it is *res judicata* and entitled to full faith and credit in this State. We are required under Art. IV, Sec. 1 of the Constitution of the United States to give the same faith and credit in this State to the 'dismissed agreed' order or judgment as 'by law or usage' the Courts of Virginia would give to such order or judgment." 239 S. C., at 317, 123 S. E. 2d, at 39.

We granted certiorari to consider this question of full faith and credit upon which the South Carolina Supreme Court's judgment rests. 369 U. S. 801 (1962).

The husband has argued that we need not reach the full faith and credit question because the State Supreme Court rested its decision on South Carolina law rather than on the Full Faith and Credit Clause of the Federal Constitution. This argument is based on language in the closing part of the court's opinion, where it was said that "A judicial award of the custody of a child is never final" and that a South Carolina court may "even on its own motion" reconsider the custody of a child if new facts and circumstances make it necessary or desirable for the child's welfare to do so. The court concluded, however, that it found in the pleadings and the record "neither allegation

nor proof of any changed circumstances authorizing a change of the custody of the minor children of the parties to this action." 239 S. C., at 317–318, 123 S. E. 2d, at 39. It seems clear to us that the State Supreme Court was merely stating that under its own law it could modify custody decrees if the circumstances had changed.[2] It seems equally clear to us that the court was not attempting to rely on South Carolina law for its conclusion that, since there were no changed circumstances, it had to give effect to the prior Virginia decree. In previously stating the issue submitted in the case, the court had said this:

> "It was further submitted that the Juvenile and Domestic Relations Court of Greenville County must recognize, in accordance with the full faith and credit clause of the Constitution of the United States, the agreed Order of Dismissal of the Virginia Court and that such was *res judicata,* unless there was evidence of subsequent misconduct on the part of the appellant or a change of conditions warranting a change of the custody of the children." 239 S. C., at 309, 123 S. E. 2d, at 34–35.

What the court then went on to discuss was not whether the Virginia decree was *res judicata* under South Carolina law but whether it was *res judicata* under Virginia law and therefore entitled to full faith and credit in South Carolina. We are convinced that the court rested its decision squarely and solely on its reading of Virginia law and of the Full Faith and Credit Clause as requiring South Carolina, in the absence of a change of circumstances, to give full effect to the prior Virginia decree. Nothing in the court's opinion suggests what it might have

---

[2] We have held that a court in one State can so modify a custody decree made in another State. *New York ex rel. Halvey* v. *Halvey,* 330 U. S. 610 (1947).

done under South Carolina law had it not so interpreted the Full Faith and Credit Clause.

Whether the South Carolina court's interpretation of the Full Faith and Credit Clause is a correct one is a question we have previously reserved.[3] We need not reach that question here. The Full Faith and Credit Clause, if applicable to a custody decree, would require South Carolina to recognize the Virginia order as binding only if a Virginia court would be bound by it. Recognizing this, the South Carolina Supreme Court's opinion was largely devoted to a review of Virginia cases to determine the effect in Virginia of the order of dismissal. The cases relied on by the South Carolina court do hold that the parties to some actions may agree to a dismissal and that in such cases a "dismissed agreed" order is *res judicata* between the parties. All of the Virginia cases discussed by the South Carolina court, however, involved purely private controversies [4] which private litigants can settle, and none involved the custody of children where the public interest is strong. In each case the Virginia dismissal was the result of an agreement between the parties equivalent to a compromise intended to settle a cause of action.[5] Whatever the effect given such dismissals where only private interests of parties are involved, cases involving custody of children raise very different considerations. We are of the opinion that Virginia law, which

---

[3] *Kovacs* v. *Brewer*, 356 U. S. 604, 607 (1958); *New York ex rel. Halvey* v. *Halvey*, 330 U. S. 610, 615–616 (1947).

[4] *Murden* v. *Wilbert*, 189 Va. 358, 53 S. E. 2d 42 (1949) (negligence action arising out of automobile accident); *Hinton* v. *Norfolk & W. R. Co.*, 137 Va. 605, 120 S. E. 135 (1923) (personal injury suit); *Bardach Iron & Steel Co.* v. *Tenenbaum*, 136 Va. 163, 118 S. E. 502 (1923) (seller's suit for buyer's breach of contract).

[5] *Ibid.* In a fourth case mentioned in the South Carolina opinion, *Virginia Concrete Co.* v. *Board of Supervisors*, 197 Va. 821, 91 S. E. 2d 415 (1956), the dismissal was at the motion of plaintiff's counsel and was "with prejudice."

does not treat a contract between the parents as a bar to the court's jurisdiction in custody cases,[6] would similarly not treat as *res judicata* the dismissal in this case.

The Virginia court held no hearings as to the custody of the children. In entering its order of dismissal, the court neither examined the terms of the parents' agreement nor exercised its own judgment of what was best for the children. The court's order meant no more than that the parents had made an agreement between themselves. Virginia law, like that of probably every State in the Union,[7] requires the court to put the child's interest first. The Supreme Court of Appeals of Virginia has stated this policy with unmistakable clarity:

> "In Virginia, we have established the rule that the welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children. All other matters are subordinate." *Mullen* v. *Mullen*, 188 Va. 259, 269, 49 S. E. 2d 349, 354 (1948).

Unfortunately, experience has shown that the question of custody, so vital to a child's happiness and well-being, frequently cannot be left to the discretion of parents. This is particularly true where, as here, the estrangement of husband and wife beclouds parental judgment with emotion and prejudice. In Virginia, the parents cannot make agreements which will bind courts to decide a custody case one way or the other. The Virginia Supreme Court of Appeals has emphasized this deep-rooted Virginia policy by declaring: "The custody and welfare of children are not the subject of barter." *Buchanan* v. *Buchanan*, 170 Va. 458, 477, 197 S. E. 426, 434 (1938).

---

[6] *Gloth* v. *Gloth*, 154 Va. 511, 551, 153 S. E. 879, 892 (1930).

[7] See 17A Am. Jur., Divorce and Separation, § 818 (1957) and cases there collected.

Whatever a Virginia court might do in a case where another court had exercised its considered judgment before awarding custody,[8] we do not believe that, in view of Virginia's strong policy of safeguarding the welfare of the child, a court of that State would consider itself bound by a mere order of dismissal where, as here, the trial judge never even saw, much less passed upon, the parents' private agreement for custody and heard no testimony whatever upon which to base a judgment as to what would be best for the children.

We hold that the courts of South Carolina were not precluded by the Full Faith and Credit Clause from determining the best interest of these children and entering a decree accordingly. In holding otherwise, the South Carolina Supreme Court was in error. The case is reversed and remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

---

[8] A custody decree entered by a Virginia court "ordinarily" will not be altered in the absence of changed circumstances. *E. g., Collins* v. *Collins,* 183 Va. 408, 32 S. E. 2d 657 (1945); *Darnell* v. *Barker,* 179 Va. 86, 18 S. E. 2d 271 (1942). Even where there is such a decree, it is arguable that Virginia courts do in fact make *de novo* reviews of the correctness of the original decrees. See *Semmes* v. *Semmes,* 201 Va. 117, 109 S. E. 2d 545 (1959); *Andrews* v. *Geyer,* 200 Va. 107, 104 S. E. 2d 747 (1958).