**Gail SYLVANDER, for herself and on behalf of her natural son, Michael J. Sylvander**

v.

**NEW ENGLAND HOME FOR LITTLE WANDERERS.**

Civ. A. Nos. 75–4039–T and 76–2912–T.

United States District Court,
D. Massachusetts.

Jan. 3, 1978.

---

394

Lewis & Lewis, Ben D. Lewis, Taunton, Mass., James H. Wexler, East Boston, Mass., for Sylvander.

Van C. Lanckton, Boston, Mass., Gen. Counsel, for amicus Dept. of Public Welfare.

Robert C. Silver, Hale, Sanderson, Byrnes & Morton, Robert H. Flynn, Boston, Mass., for N. E. Home.

Stephen P. Berzon, Washington, D. C., Marian Wright Edelman, for amicus.

Jeremy A. Stahlin, Shubow, Stahlin & Bergstresser, Inc., Boston, Mass., for amicus Children's Service Ass'n and Catholic Charitable Bureau of Boston.

## MEMORANDUM AND ORDER

TAURO, District Judge.

Plaintiff-petitioner (hereinafter plaintiff)[1] challenges the constitutionality of the statutory procedure under which her rights over her child were terminated without her consent. Defendant is a licensed child care agency. At issue is Mass.Gen.Laws ch. 210, § 3[2] which allows non-consensual termination upon a finding by a probate judge that adoption is in the "best interests" of a child who is in the custody of the Department of Public Welfare or a licensed child care agency.

### I.

On June 28, 1972, plaintiff gave birth out of wedlock, to a boy, Michael.[3] During the latter part of her pregnancy, she discussed with a social worker possible alternatives for taking care of the expected child. Temporary foster care was suggested as a means of giving her time to make permanent plans for the child. Before Michael's birth, she voluntarily assigned his care and custody to the defendant child care agency. The agreement she signed provided that she would continue to have all her rights and responsibilities as a parent.

At the time she gave birth, plaintiff was living with her two brothers and her seventy year old father, who told her that he would refuse to let the child into the house. The defendant assumed custody and placed the baby in a foster home. Plaintiff was

---

1. See n. 5 infra.

2. Mass.Gen.Laws ch. 210, § 3 provides in part:

   Dispensing with required consent in certain cases; child under care of charitable or public institution; notice of petition

   (a) Whenever a petition for adoption is filed by a person having the care or custody of a child, the consent of the persons named in section two, other than that of the child, shall not be required if:

   .  .  .  .  .

   (ii) the court hearing the petition finds that the allowance of the petition is in the best interests of the child, as defined in paragraph (c).

   (b) The department of public welfare or any licensed child care agency may commence a proceeding, independent of a petition for adoption, in the probate court of Suffolk county or any other county in which said department or agency maintains an office, to dispense with the need for consent of any person named in section two to the adoption of a child in the care or custody of said department or agency. Notice of such proceeding shall be given to such person in a manner prescribed by the court. The court shall issue a decree dispensing with the need for said consent or notice of any petition for adoption of such child subsequently sponsored by said department or agency if it finds that the best interests of the child as defined in paragraph (c) will be served by said degree (sic). Pending a hearing on the merits of a petition filed under this paragraph, temporary custody may be awarded to the petitioner.

   (c) .  .  .

   In determining whether the best interests of the child will be served by issuing a decree dispensing with the need of consent as permitted under paragraph (b), the court shall consider the ability, capacity, fitness and readiness of the child's parents or other person named in section two of chapter two hundred ten to assume parental responsibility, and shall also consider the plan proposed by the department or other agency initiating the petition.

   If said child has been in the care of the department or a licensed child care agency for more than one year, in each case irrespective of incidental communications or visits from his parents or other person named in section two, irrespective of a court decree awarding custody of said child to another and notwithstanding the absence of a court decree ordering said parents or other person to pay for the support of said child there shall be a presumption that the best interests of the child will be served by granting a petition for adoption as permitted under paragraph (a) or by issuing a decree dispensing with the need for consent as permitted under paragraph (b).

3. The factual background of this dispute is drawn from documents which the parties stipulated were to constitute the record in this case. See Case Submitted on Documents (stipulation submitted by parties on June 30, 1977).

unable to find steady employment and had limited funds, but did make regular payments of $18 a week for the care of her child.

A month after the birth, plaintiff told the defendant that she wanted to keep the child, but evidenced no means or plan for support. On two occasions thereafter, she failed to appear for meetings that had been arranged with the foster parents so that she could see her child. She did make several unannounced visits, however, in violation of the foster care agreement.

Plaintiff's father eventually agreed to allow the baby into the house. The defendant, however, refused to return the child to the plaintiff, on the grounds that her plans for his care were too vague, confused and unrealistic.

After ten months, the defendant petitioned, pursuant to Mass.Gen.Laws ch. 210, § 3(b), to dispense with plaintiff's consent for adoption. The defendant's plan was to place the child permanently with a young couple in their thirties (not the foster family). The couple had another adopted child and was clearly suitable in terms of stability, affluence, education and health. After two days of hearing, at which the mother was represented by counsel, the probate court granted the defendant's petition, finding that the plaintiff's plans for her child were unrealistic and that adoption was in the latter's "best interests."

4. *Petition of New England Home for Little Wanderers*, 67 Mass. 631, 328 N.E.2d 854 (1975).

5. 28 U.S.C. § 1257(2). *See Huffman v. Pursue*, 420 U.S. 592, 605, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975) where the Court stated: where a final decision of a state court has sustained the validity of a state statute challenged on federal constitutional grounds, an appeal to this Court lies as a matter of right.

6. Due to questions concerning the existence of the requisite element of state custody, the court initially dismissed the petition for habeas corpus, without prejudice to petitioner's filing suit under 42 U.S.C. § 1983. Petitioner subsequently filed suit under that statute and moved the court to reconsider its order dismissing the habeas petition. The order of dismissal was vacated and the two suits consolidated.

On May 5, 1975 the Supreme Judicial Court affirmed the probate court's decision,[4] and on May 28 refused to rehear the matter. Plaintiff did not exercise her right of appeal[5] to the United States Supreme Court. After the time for appeal had run, she petitioned here for habeas corpus relief. Subsequently, she was given leave to amend her complaint to bring a related cause of action under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, and the two cases were consolidated.[6]

## II.

Plaintiff contends that she has been denied due process and equal protection because section 3(b) does not require that the state make a finding that a parent is "unfit" prior to permitting a nonconsensual adoption.[7] Plaintiff argues that the statute requires the probate court to draw a comparison between the background and economic circumstances of the natural parent(s) and those of the intended foster parents in determining a child's "best interests." By way of contrast, plaintiff points to Mass.Gen.Laws ch. 201, § 5, which provides for non-consensual appointment of a guardian for a child, not in the care or custody of the department of public welfare or a social agency, only upon a showing of parental "unfitness."[8] According to plain-

7. Although parental "fitness" is one of the factors to be considered in determining the child's "best interests," *see* Mass.Gen.Laws ch. 210, § 3(c), the statute on its face does not require a finding of parental "unfitness."

8. Mass.Gen.Laws ch. 201, § 5 provides in part:
   § 5. Minors; custody and education; marriage; effect
   The guardian of a minor shall have the custody of his person and the care of his education, except that the parents of the minor, jointly, or the surviving parent shall have such custody and said care unless the court otherwise orders. The probate court may, upon the written consent of the parents or surviving parent, order that the guardian shall have such custody; and may so order if, upon a hearing and after such notice to the parents or surviving parent as it may order, it finds such parents, jointly, or the surviving parent, unfit to have such custody; or if it finds one of them unfit therefor and

tiff, the standard in the latter statute does not require that such a comparison be drawn between the natural parents and the guardians.

Clearly, plaintiff has raised serious constitutional claims,[9] but this court is now persuaded that it does not have jurisdiction to consider their merit.

### III.

■ It is now well established that a state court decision on constitutional issues is res judicata to the identical issues raised under the Civil Rights Act[10] in a federal court. *See Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *P. I. Enterprises, Inc. v. Cataldo*, 457 F.2d 1012 (1st Cir. 1972). *See also Anderson v. Watertown Savings Bank*, No. 77–1140 (1st Cir., Nov. 11, 1972). A party who has had a full and fair opportunity to litigate constitutional issues before the highest state courts cannot use 42 U.S.C. § 1983 as a substitute for a right of appeal, or as a means of collateral attack on the final judgment of the state court. *P. I. Enterprises v. Cataldo, supra.*

■ Here, plaintiff had full opportunity to address all her constitutional claims to the Supreme Judicial Court which, in turn, held the challenged statute constitutional on its face and as applied. The majority ruled that the standards of "best interests" and "unfitness" were not separate and distinct but "cognate and connected," reflecting "different degrees of emphasis on the same factors." 328 N.E.2d at 860.

> (E)lements of parental "unfitness" figure strongly in the "best interests" test, while elements of "best interests of the child" weigh in any consideration of whether a parent is fit to have custody of his child. When the interconnection or overlap is appreciated, the mother's case on the present facts is seen to be unavailing.

328 N.E.2d at 858.

The court determined, as a matter of state law, that section 3(b) was not intend-ed to deprive parents of the custody of their children, even if they had temporarily given up custody, simply because another set of parents was found "better" qualified. 328 N.E.2d at 859–60. Further, the court stated that a parent cannot be deprived of a child unless some "affirmative reason is shown for doing so such as a finding of a serious problem with that parent," or an overly long separation between parent and child.

With respect to the plaintiff, the Supreme Judicial Court conceded that the separation period was too short to be a decisive factor in the decision to terminate her parental rights. The court, however, determined that adoption was in the child's best interests since the plaintiff had failed to "demonstrate either a consistent desire for custody or an ability to care properly for the child if given custody." 328 N.E.2d at 862. In reaching this conclusion, the court stated explicitly that both the "best interests" test and the "unfitness" standard dictated the same result.

■ This court is not empowered to review decisions of the Supreme Judicial Court interpreting the Commonwealth's constitution and statutes, nor does it have jurisdiction under § 1983 to consider constitutional claims first presented to, and passed upon, by that court. Plaintiff's argument that the principles of res judicata and collateral estoppel are not applicable to civil rights actions involving restraints on personal liberty has no force in light of *Fortune v. Mulherrin*, 533 F.2d 21 (1st Cir.), *cert. denied*, 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976). In *Fortune* the Court of Appeals held that a federal court had no jurisdiction to review a child custody proceeding under § 1983 where a state court had already rejected plaintiff's claim that an unconstitutional standard had been applied.

■ Application of the doctrine of res judicata may seem rigid in this case where

---

the other files in court his or her written consent to such order.

**9.** *See* n. 13 *infra.*

**10.** 42 U.S.C. § 1983.

plaintiff was an involuntary state defendant in the custody proceeding and, as such, had no right of removal to federal court. Plaintiff, however, did have the right of direct appeal to the Supreme Court.[11] Having forfeited this opportunity for federal review, she cannot collaterally attack the state court judgment by bringing suit in the district court under 42 U.S.C. § 1983.

## IV.

■ Although the petition for habeas corpus, unlike the cause of action brought under the Civil Rights Act, is not barred by application of the doctrine of res judicata, *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), it must fail because petitioner has not made a sufficient showing that her child is in state custody.

The federal Habeas Corpus Act, 28 U.S.C. § 2254, imposes three limitations on a federal court's jurisdiction to entertain petitions for habeas corpus. The person on whose behalf the petition is brought must be 1) in "custody" 2) in violation of the federal laws or Constitution 3) "pursuant to the judgment of a State court."[12] Plaintiff has made the requisite showing with respect to custody[13] and constitutional violation,[14] but has not established the necessary element of state involvement.

At present, the child is in the custody of the defendant, a private non-profit agency engaged in child care. The Probate Court decree authorizing the child's adoption without the plaintiff's consent does not place the boy in state custody.[15] Petition-

---

11. *See* note 4, *supra.*

12. 28 U.S.C. § 2254 provides in part:
    (a) . . . a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

13. Restraints on plaintiff's child's liberty are sufficient to constitute "custody" within the meaning of the statute. In recent years the statute has been broadly interpreted to require less severe forms of restraint. *See Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (release of petitioner on own recognizance constitutes custody within meaning of statute); *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (release on parole constitutes custody for purposes of federal habeas corpus). *See also Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (federal habeas corpus available although petitioner unconditionally released from prison after writ filed). Under the expanded concept of custody, a petitioner must be subject to some restraint, but need not necessarily be confined. Supervisory control over the person of the petitioner will suffice. *Pueschel v. Leuba,* 383 F.Supp. 576 (D.Conn. 1974). The finding made by the state court that plaintiff's child is in the physical custody of the defendant, 328 N.E.2d at 861, is relevant here in that it indicates that the child is subject to the supervisory control of the Home.
    It is unnecessary to reach the question whether plaintiff has standing to petition for habeas corpus on her own behalf as well as on behalf of her child since § 2254 explicitly provides that a district court may entertain an application for habeas corpus on behalf of a person in custody. *Cf. United States ex rel. Kirk v. Kirkpatrick,* 330 F.Supp. 821 (E.D.Pa. 1971) (petition filed by father on behalf of 15 year old minor). *See also* 28 U.S.C. § 2242.

14. Petitioner sets forth substantial constitutional arguments worthy of review. In recent years, federal courts have become increasingly protective of the constitutional right to family unity. *See Smith v. O. F. F. E. R.,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir. 1977); *Alsager v. District Court of Polk County,* 406 F.Supp. 10 (S.D.Iowa 1975), *aff'd in part,* 545 F.2d 1137 (8th Cir. 1976). In emphasizing the importance of the family unit, the courts have defined the right of parents to raise their own children as "basic", "essential," *Stanley v. Illinois, supra,* at 651, 92 S.Ct. 1208, *Duchesne v. Sugarman, supra* at 817, and "fundamental," *Alsager v. District Court, supra* at 15. It is now well recognized that the integrity of family relationships, even those unlegitimized by a marriage ceremony, find protection in the due process and equal protection clauses of the Constitution. *Stanley v. Illinois, supra,* at 651, 92 S.Ct. 1208.

15. It is unnecessary to address the question of whether the probate court's judgment constitutes state action for purposes of a cause of action under the Civil Rights Act, 42 U.S.C. § 1983, given the finding that petitioner's cause of action under that statute is barred by application of the principle of res judicata. *See* Section III, *supra.*

er's status is analogous to the type of parental custody a probate court may decree in divorce proceedings. Mass.Gen.Laws ch. 208, § 28. Under a literal reading of 28 U.S.C. § 2254, a child placed in the custody of a divorced parent or a third party by probate court decree could be deemed "in custody pursuant to the judgment of a State court." The Court of Appeals, however, has clearly stated that custody under such a circumstance does not afford federal habeas corpus relief. *Donnelly v. Donnelly*, 515 F.2d 129 (1st Cir.), *cert. denied*, 423 U.S. 998, 96 S.Ct. 429, 46 L.Ed.2d 373 (1975).[16]

*V.*

For all of the above reasons, this court determines that it does not have jurisdiction to entertain this suit either under 42 U.S.C. § 1983 or under 28 U.S.C. § 2254. An order dismissing the petition and complaint has issued.

---

**16.** The writ of habeas corpus has been widely used by parents in child custody disputes before state courts. *See Jones v. Cunningham*, 371 U.S. 236, 240, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *Ford v. Ford*, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962); *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). Those cases establish that alleged deprivation of parental rights can be reviewed in a state habeas corpus proceeding. The issue here, however, is whether federal habeas corpus relief is available when, pursuant to a decree of the probate court, a child is in the temporary custody of a private agency pending adoption proceedings. Petitioner cites cases where federal courts have exercised habeas corpus jurisdiction in child custody disputes. These cases, arising in federal territories or involving foreign relations are inapposite inasmuch as they rest on other bases of jurisdiction. *See United States ex rel. Cobell v. Cobell*, 503 F.2d 790 (9th Cir. 1974), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); *Application of Reed*, 447 F.2d 814 (3d Cir. 1971); *Bell v. Leonard*, 102 U.S.App.D.C. 179, 251 F.2d 890 (1958); *Young v. Minton*, 344 F.Supp. 423 (W.D.Ky.1972); *United States ex rel. Schneider v. Sauvage*, 91 F. 490 (W.D.Pa. 1899). The one case cited where a federal court issued a writ of habeas corpus in a child custody case is an unreported opinion, *United States ex rel. Reed v. Tinder*, No. 75–0454 (D.W.Va.1975). In *Tinder*, the child was in the custody of the state department of welfare. Here, the child is in the temporary custody of a private agency.