**Michael D. LEYDA, Plaintiff,**

v.

**Heidi A. ROACH, f/k/a Heidi A. Leyda, Defendant.**

**Civ. No. 86–171–D–2.**

United States District Court,
S.D. Iowa,
Davenport Division.

Jan. 8, 1987.

---

Daniel L. Bray, Iowa City, Iowa, for plaintiff.

Heidi A. Roach, pro se.

## RULING AND ORDER OF DISMISSAL

VIETOR, Chief Judge.

Plaintiff brings this action under the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. He asserts that jurisdiction is predicated upon 28 U.S.C. § 1331, which provides that the federal district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Plaintiff alleges in his complaint that he and defendant were married to one another in Iowa in 1977, and in 1978 a child, Kimberly, was born to them. In 1981 defendant commenced a dissolution of marriage action in Iowa and in 1982 the Iowa District Court in and for Henry County entered a decree dissolving the marriage. Plaintiff describes in detail subsequent proceedings that have taken place in both the Iowa courts and the Florida courts relative to the custody of Kimberly. (Defendant now resides in Florida.) Plaintiff alleges that both the Iowa and Florida courts are asserting jurisdiction over the custody determination issue, and he asks this court for a declaratory judgment that under the provisions of the PKPA Iowa is the only state that has jurisdiction to litigate and determine the custody of Kimberly. He also asks this court to enjoin the defendant from proceeding further to adjudicate custody in the Florida courts.

Defendant has filed a motion to dismiss contending that plaintiff has failed to state a cause of action upon which relief can be granted and that this court lacks subject matter and personal jurisdiction to grant the relief requested. That motion has been resisted and the matter has been submitted to the court upon written briefs of the parties.

The PKPA provides that the appropriate authorities of every state shall enforce according to its terms, and shall not modify except as provided in the PKPA, any child custody determination made consistently with the provisions of the PKPA by a court of another state. It provides definitions of words and terms and it establishes the conditions under which a state court's child custody determination is consistent with the provisions of the PKPA. It establishes the conditions that must be met before a state court may modify a child custody determination made by a court of another state. The PKPA's final provision, subsection (g), is:

> A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

All provisions of the PKPA are directed to state courts. The PKPA does not expressly authorize suit in federal court to enforce its provisions.

The background of the PKPA's enactment (in 1980) is traced by the United States Court of Appeals for the Ninth Circuit in *Thompson v. Thompson*, 798 F.2d 1547, 1553–54 (9th Cir.1986):

The PKPA was adopted primarily to reduce the incentive for parental child-snatching created by refusal of a significant number of states to give effect to the child custody decrees of other states. Prior to enactment of the PKPA, a parent who lost a custody battle in one state had every incentive to snatch the child and move to another state to relitigate the custody issue. Often the snatcher would be rewarded with a favorable custody decree notwithstanding the existence of a conflicting custody decree from the original state. [Footnote omitted.]

Such forum shopping was possible because states were not bound by the child custody decrees of sister states. It was not clear that the Full Faith and Credit Clause applied to custody determinations, *see Ford v. Ford,* 371 U.S. 187, 192, 83 S.Ct. 273, 276, 9 L.Ed.2d 240 (1962), and even if it did, a state was bound by the prior custody decree of another state only to the extent that the courts of the state entering the decree would be bound, *id.* at 194, 83 S.Ct. at 277. Because the state entering the decree might modify it freely as conditions affecting the child changed, the courts of another state were free to modify a child custody decree in the same way. *Id.* at 191 n. 2, 83 S.Ct. at 275 n. 2. [Footnote omitted.]

In an attempt to deal with the problem, a number of states enacted the Uniform Child Custody Jurisdiction Act (UCCJA), 9 U.L.A. §§ 1–28 (1979), which established standards for selecting the appropriate state forum to determine custody, and imposed a duty on the enacting states to recognize and enforce its custody decree entered by such a state forum. The UCCJA proved unsatisfactory for several reasons. A substantial number of states did not adopt the UCCJA, and thus continued to provide havens for child snatchers. *See PKPA Hearing, supra,* at 144 (statement of Prof. Coombs). Several states enacted variations on UCCJA undermining the uniformity essential to the elimination of forum-shopping. *Id.* Even among states that enacted identical provisions, variations in interpretation and application created a potential for dual exercise of jurisdiction and conflicting custody awards. *Id.* at 144–45. In adopting the PKPA, Congress sought to solve these problems by imposing upon all states a single uniform set of federal standards identical to those found in the UCCJA.

For the same reasons the court found personal jurisdiction over defendant in *Thompson, supra,* 798 F.2d at 1549–50, this court finds under the facts of this case that it has personal jurisdiction over defendant.

The issue of whether an action like this presents a claim upon which a federal district court may grant relief has been decided by four circuit courts of appeal. Three have held it does. *McDougald v. Jenson,* 786 F.2d 1465 (11th Cir.1986); *Heartfield v. Heartfield,* 749 F.2d 1138 (5th Cir.1985); *DiRuggiero v. Rodgers,* 743 F.2d 1009 (3d Cir.1984); *Flood v. Braaten,* 727 F.2d 303 (3d Cir.1984). The Ninth Circuit has held it does not. *Thompson v. Thompson, supra.*

I am persuaded by the Ninth Circuit's reasoning in *Thompson* at pages 1551–59 that the PKPA does not create a cause of action cognizable in federal court. The reasoning is well stated in *Thompson* and need not be fully reiterated in this ruling. In essence, the PKPA establishes the standards by which a state court's jurisdiction to make a child custody determination is to be determined, and it provides that child custody determinations by state courts having jurisdiction are to be given full faith and credit by other states. The PKPA is a "full faith and credit" statute that is immediately preceded by 28 U.S.C. § 1738, the general statutory implementation of Article IV, section 1 of the United States Constitution. Article IV, section 1 provides:

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

The Full Faith and Credit clause of the Constitution and section 1738 do not create federal jurisdiction for, or give rise to, federal court actions to enforce the giving of full faith and credit, *Minnesota v. Northern Securities Co.*, 194 U.S. 48, 72, 24 S.Ct. 598, 605, 48 L.Ed. 870 (1904); *Thompson, supra* 798 F.2d at 1555–56; and, in my opinion, neither does the PKPA.[1]

One reason advanced for the result reached in *McDougald,* 786 F.2d at 1477, *Heartfield,* 749 F.2d at 1141, and *Flood,* 727 F.2d at 312, was that any other result would "render § 1738A virtually nugatory by so restricting the availability of a federal forum that state compliance with the legislation would become optional." This reasoning is at odds with the fundamental law of this nation. Article VI of the United States Constitution provides in part:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Under this Supremacy clause it is the solemn obligation of state judges to apply the Full Faith and Credit clause of the Constitution and the PKPA to any custody determination suit brought before them. *See Schlesinger v. Councilman,* 420 U.S. 738, 755–56, 95 S.Ct. 1300, 1311–12, 43 L.Ed.2d 591 (1975) ("Equally important, under Art. VI of the Constitution, state courts share with federal courts an equivalent responsibility for the enforcement of federal rights, a responsibility one must expect they will fulfill."); *Lee v. Florida,* 392 U.S. 378, 385–86, 88 S.Ct. 2096, 2100–01, 20 L.Ed.2d 1166 (1968) (the Court, articulating the "imperative of judicial integrity," stated: "Under our Constitution, no court, state or federal, may serve as an accomplice in the willful transgression of 'the Laws of the United States,' laws by which 'the Judges in every State [are] bound * * *.' "). This obligation is especially binding where, as here, the federal law consists of commands expressly running to state courts. *See Marshall v. District Court,* 444 F.Supp. 1110, 1116 (E.D.Mich.1978). State judges have no right to render the PKPA "nugatory" or to treat its provisions as merely "optional," and I see no reason to assume that they would, in violation of the supreme law of the land and their oaths of office as judges,[2] try to do so.

Of course, the PKPA is to be applied—by the state courts in which child custody determination proceedings are commenced. In the case of Kimberly's custody, the obligation of correctly applying the PKPA rests squarely on the courts of Iowa and Florida.

Defendant's motion to dismiss is granted, and IT IS ORDERED that plaintiff's complaint be dismissed.

---

1. A full faith and credit question can go from the state's supreme court to the Supreme Court by certiorari. *Union National Bank v. Lamb,* 337 U.S. 38, 39, 69 S.Ct. 911, 93 L.Ed. 1190 (1949).

2. Article XI, section 5 of the Constitution of the State of Iowa provides: "Every person elected or appointed to any office, shall, before entering upon the duties thereof, take an oath or affirmation to support the Constitution of the United States, and of this State, and also an oath of office." Iowa Code Section 63.6 (1985) provides:

All judges of courts of record shall qualify before taking office following appointment by taking and subscribing an oath to the effect that they will support the Constitution of the United States and that of the state of Iowa, and that, without fear, favor, affection, or hope of reward, they will, to the best of their knowledge and ability, administer justice according to the law, equally to the rich and the poor.

Florida judges also must take an oath to support the Constitution of the United States. Article 2, section 5 of the Constitution of the State of Florida (1968 Revision); Fla.Stat.Ann. § 876.-05 (1981).