Ray MARSHALL, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

DISTRICT COURT FOR the FORTY-
FIRST–b JUDICIAL DISTRICT OF
MICHIGAN, MOUNT CLEMENS DIVI-
SION, John G. Roskopp, as Judge of the
District Court for the Forty-First-b Ju-
dicial District of Michigan, Mount Cle-
mens Division, Dolores Wiskirch, as
Clerk of the District Court for the For-
ty-First-b Judicial District of Michigan,
Mount Clemens Division, Sears, Roe-
buck & Co., a corporation, and Ford
Motor Company, a corporation, Defend-
ants.

Civ. A. No. 7–71621.

United States District Court,
E. D. Michigan, S. D.

Jan. 19, 1978.

John C. Nangle, Associate Regional Sol. of Labor, U. S. Dept. of Labor, Detroit, Mich., for plaintiff.

Kermit G. Bailer, Corp. Counsel, Ford Motor Co., Dearborn Mich., Richard L. Lehman, Troy, Mich., James C. Daner, Mount Clemens, Mich., for defendants.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

GUY, District Judge.

The plaintiff, Secretary of Labor, United States Department of Labor, having filed his complaint; and the defendants having appeared; and all the parties having entered into an agreement providing for the entry of these findings of fact and conclusions of law and dismissal of this action without the entry of a prospective injunction; and the court having been fully advised in the premises; now therefore, on

motion of the plaintiff, the court hereby makes and enters its findings of fact and conclusions of law [1] as follows:

### Findings of Fact

1. This is an action by the Secretary of Labor, United States Department of Labor, hereinafter called the Secretary, brought to enforce the provisions of section 303 of Title III of the Consumer Credit Protection Act, as enacted May 29, 1968, effective July 1, 1970, and as amended by Public Law 95–30 on May 23, 1977, effective June 1, 1977 (15 U.S.C. 1671, *et seq.*), hereinafter called the Act.

2. Defendant Sears, Roebuck & Co. (hereinafter called Sears) is and at all times hereinafter mentioned was a corporation having its principal office and place of business at Sears Tower, Chicago, Illinois; and it is and at all times hereinafter mentioned was engaged in the sale of goods in its nationwide chain of department stores and through its nationwide catalogue operations.

3. Defendant Ford Motor Company (hereinafter called Ford) is and at all times hereinafter mentioned was a corporation having its principal office and place of business at Ford World Headquarters, Dearborn, Michigan; and it is and at all times hereinafter mentioned was engaged in the manufacture and sale of automobiles, trucks, and other goods of various kinds.

4. Defendant District Court for the Forty-First-b Judicial District of the State of Michigan, Mount Clemens Division (herein-after called the State Court) is and at all times hereinafter mentioned was a court of the State of Michigan having, pursuant to Michigan Statutes Annotated, Sections 27A.8122, 27A.8301, 27A.8306, and 27A.4011 [M.C.L.A. §§ 600.4011, 600.8122, 600.8301, 600.8306] original jurisdiction in the City of Mount Clemens in the County of Macomb, Michigan, to adjudicate claims that do not exceed $10,000 and, among other things, to subject the earnings of judgment debtors to garnishment in order to satisfy the judgments.

5. Defendant John G. Roskopp (hereinafter called Judge Roskopp) is and at all times hereinafter mentioned was a duly elected and functioning judge of the State Court.

6. Defendant Dolores Wiskirch (hereinafter called Clerk Wiskirch) is and at all times hereinafter mentioned was the Clerk of Court for the State Court.

7. Mr. Norman Jones (hereinafter called Mr. Jones), from time to time over a period well in excess of a year, made various purchases of various goods from Sears for his use; and Mr. Jones used a charge account, pursuant to a charge account agreement he had with Sears, to obtain some or all of said goods on credit.

8. Upon failure of Jones to pay Sears in full the total of the purchase prices they had agreed upon for such goods as purchased by and delivered to Mr. Jones by Sears, together with finance charges provided for in the charge account agreement

---

1. When terms defined in the Act are used in these findings of fact and conclusions of law, they are used as defined in the Act, except where otherwise indicated; and the term "general restriction", as used in these findings of fact and conclusions of law, means the restrictions contained in section 303(a) of the Act (as opposed to the special restrictions contained in section 303(b)(2) of the Act as amended effective June 1, 1977, pertaining to orders for the support of any person). Section 303(a) reads as follows:

(a) Except as provided in subsection (b) and in section 305, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 percentum of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 in effect at the time the earnings are payable,

whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

entered into between them, Sears on or about August 28, 1974, filed a civil action (Docket Number MC 74–8389) in the State Court against Mr. Jones for $1,164.89, the unpaid balance due thereon; and as a result, on or about November 25, 1974, Sears obtained a judgment (hereinafter called the principal judgment) against Mr. Jones for $1,164.89, plus $20.00 in court costs, for a total of $1,184.89, substantially all of which remained unpaid at all times material hereto except for the $34.81 withheld by Ford and paid to Sears from the earnings of Mr. Jones for the weekly pay period ending March 30, 1975 (hereinafter called the weekly pay period in question), as hereinafter described.

9. On or about September 30, 1974, in *Sylvia Jones v. Norman Jones*, Docket Number D73–6905 in the Circuit Court for the County of Macomb, Michigan, a Divorce Judgment (hereinafter called the Divorce Judgment) was entered against Mr. Jones in a divorce action brought on December 31, 1973, by his then wife. The Divorce Judgment granted the divorce sought and ordered Mr. Jones to pay $32.00 per week in child support for each of his three children of the marriage there ended, for a total of $96.00 per week in child support payments.

10. Mr. Jones failed to voluntarily make the child support payments called for by the Divorce Judgment. Accordingly, on or about November 29, 1974, the court which entered the Divorce Judgment entered an "Order for Wage Assignment" (hereinafter called the Order for Wage Assignment) which ordered Mr. Jones to direct his employer to withhold from his earnings each week the sum of $96.00 to meet the child support provisions of the Divorce Judgment and pay amounts so withheld directly to the Friend of the Court of the Macomb County Circuit Court (16th Judicial Circuit) (hereinafter called the Friend of the Court) to be used for the support of the children of the marriage ended by the Divorce Judgment; the Order for Wage Assignment further provided that upon Mr. Jones' failure to so direct, the order be served on Mr. Jones' employer and itself be effective to direct the employer to make such withholdings and payments.

11. During the period from on or about September 1, 1964 to on or about November 4, 1975, Mr. Jones was employed by Ford.

12. When Mr. Jones failed to direct Ford to withhold and pay the child support payments as required by the Order for Wage Assignment, the Order for Wage Assignment was served on Ford, which thereupon began making and continuously thereafter each weekly pay period made the withholdings and resulting payments as required by the Order for Wage Assignment.

13. When Mr. Jones failed to pay the principal judgment in favor of Sears in the State Court, Sears sought a writ of garnishment in the State Court; and on or about March 24, 1975, a writ of garnishment directed to Ford (hereinafter called the garnishment order in question) was issued by the State Court. The garnishment order in question was served on Ford on or about March 27, 1975, and pursuant to State law impacted on the earnings of Mr. Jones from Ford for the weekly pay period in question and none other.

14. In the weekly pay period in question, Mr. Jones earned from Ford for work performed by Mr. Jones in the course of his employment by Ford, the gross amount of $350.01, payable on April 3, 1975, after appropriate deductions. For the weekly pay period in question, Mr. Jones' earnings from Ford, after subtraction of the federal Social Security tax (employee portion only), the federal withholding tax, and the State withholding tax due thereon, were $235.23. From the $235.23, Ford subtracted, and paid to the Friend of the Court, $96.00 in child support payments pursuant to the Order for Wage Assignment.

15. Pursuant to State law and the requirements of the garnishment order in question, Ford responded to the garnishment order in question by serving on Sears and filing with the State Court a "Disclosure" (hereinafter called the Disclosure). In its Disclosure, Ford claimed that the disposable earnings of Mr. Jones from Ford for the weekly pay period in question were

$235.23 and that Ford's liability to Sears under the garnishment order in question was zero because the $96.00 in child support withheld and paid pursuant to the Order for Wage Assignment exceeded 25% of $235.23.

16. Thereafter, Sears sought from the State Court a ruling that the child support withheld by Ford pursuant to the Order for Wage Assignment: (1) was an amount required by law to be withheld, within the meaning of section 302(b) of the Act, which should be subtracted to arrive at disposable earnings, within the meaning of the Act; and (2) was not a garnishment which absorbs disposable earnings for purposes of applying the general restrictions to the garnishment order in question.

17. When Ford learned that Sears was seeking such a ruling, Ford, knowing the position taken by the Secretary on these issues was to the contrary, notified the Secretary and asked the Secretary to take steps to vindicate the position taken by the Secretary on these issues.

18. Thereafter on May 21, 1975, attorneys for the Secretary wrote to the State Court, attention of Judge Roskopp before whom the matter was then pending, with carbon copies to Sears and Ford, stating that it was the position of the Secretary as the responsible enforcement agency under the Act, that: (1) an amount withheld pursuant to a support order was not an amount required by law to be withheld (within the meaning of section 302(b) of the Act) which could be deducted to arrive at disposable earnings (within the meaning of section 302(b) of the Act); and (2) an amount withheld pursuant to a support order absorbed disposable earnings for purposes of the application of the general restrictions, notwithstanding the fact that a court order for the support of any person was itself exempt from the general restrictions.

19. Thereafter on June 18, 1975, the State Court with Judge Roskopp presiding at a hearing held in open court and attended by Sears and Ford but not the Secretary who declined to intervene as a party in the State Court proceeding, granted the aforesaid ruling sought by Sears and ordered Ford to withhold from Mr. Jones and pay to Sears the amount of $34.81 from Mr. Jones' earnings for the weekly pay period in question, calculating that $235.23 less the $96.00 in child support yields $139.23 found by the State Court to be Mr. Jones' disposable earnings for the weekly pay period in question, and that 25% of $139.23 is $34.81 found by the State Court to be the amount withholdable for payment to Sears (over and above the $96.00 in child support withheld pursuant to the Order for Wage Assignment) without violating the general restrictions. Thereafter on July 29, 1975, the State Court entered a final "Judgment Against Garnishee" (hereinafter called the Judgment Against Garnishee) effectuating the ruling by so construing and enforcing the garnishment order in question.

20. Ford withheld from Mr. Jones and paid to Sears the $34.81, as so ordered by the State Court.

21. Judge Roskopp made the aforesaid ruling sought by Sears and on July 29, 1975, made, approved, and ordered to be entered on the docket of the State Court the Judgment Against Garnishee.

22. Clerk Wiskirch entered on the docket of the State Court the orders and rulings of the State Court, and, pursuant to the standing orders or rules of procedure of the State Court, made and entered on the said docket the garnishment order in question when originally issued on March 24, 1975.

23. Each of the defendants has represented, and the Secretary has not challenged the representation, that the actions of that defendant in the State Court proceeding, as referred to in numbered paragraphs 13 through 22 hereof, were based on interpretations of the Act by that defendant on questions of law, not theretofore resolved by the Courts, which interpretations that defendant reached in good faith and that that defendant took said actions in good faith without intent to violate the Act.

24. Throughout the State Court proceeding, as referred to in paragraphs 13 through 22 hereof, Sears was represented by outside counsel. Sears has represented,

and the Secretary has not challenged the representation, that in acting in that proceeding at variance with the Secretary's interpretation of the Act, the outside counsel proceeded without the prior knowledge of responsible officials of Sears itself.

25. Subsequent to the filing of this federal court action by the Secretary, Sears has tendered to the Secretary the $34.81, which was withheld by Ford and paid to Sears by Ford pursuant to the garnishment order in question as construed and enforced by the Judgment Against Garnishee, so that said sum can be disbursed to Mr. Jones, or if not so disbursed, deposited with the Clerk of this Court pursuant to 28 U.S.C. § 2041. Thereafter, Sears succeeded in paying the $34.81 directly to Mr. Jones, and the Secretary returned to Sears the $34.81 Sears had tendered to the Secretary.

### Conclusions of Law

26. Prior to June 1, 1977,[2] section 303(b) of the Act exempted certain orders from the general restrictions, as follows:

(b) The restrictions of subsection (a) do not apply in the case of

(1) any order of any court for the support of any person.

(2) any order of any court of bankruptcy under Chapter XIII of the Bankruptcy Act.

(3) any debt due for any State or Federal tax.

**2.** Since the 1977 amendment, effective June 1, 1977, section 303(b) has read as follows:

(b)(1) The restrictions of subsection (a) do not apply in the case of

(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review;

(B) any order of any court of bankruptcy under chapter XIII of the Bankruptcy Act;

(C) any debt due for any State or Federal tax.

(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

27. Section 302(b) of the Act defines "disposable earnings" as follows:

(b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

For the purposes of this definition, "amounts required by law to be withheld" includes the amount of deductions for federal Social Security taxes (employee portion only) and withholding taxes (whether imposed by federal, State, or local government) which are taxes due on the earnings from which the deductions are made; but it does not include any amount withheld pursuant to any order for the support of any person, within the meaning of section 303(b)(1) of the Act as enacted (section 303(b)(1)(A) of the Act since the 1977 Amendment effective June 1, 1977). The fact that an order, such as an order for the support of any person, is an order exempted by the Act from the general restrictions does not provide a lawful basis for classifying deductions made pursuant to it as "amounts required by law to be withheld" subtractable from earnings to arrive at "disposal earnings" within the meaning of section 302(b) of the Act.

28. Section 302(c) of the Act defines "garnishment" as follows:

(c) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 percentum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 percentum of such individual's disposable earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the 50 percentum specified in clause (A) shall be deemed to be 55 percentum, if and to the extent that such earnings are subject to garnishment to enforce and support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

required to be withheld for payment of any debt.

Any order which meets the definition of "garnishment" order contained in section 302(c) of the Act, including any order for the support of any person meeting that definition of "garnishment" order, is a garnishment order for all purposes under the Act. The fact that an order, such as an order for the support of any person, is an order exempted by the Act from the general restrictions does not provide a lawful basis for not classifying it as a "garnishment" order, within the meaning of the definition contained in section 302(c) of the Act.

■ 29. Any order for the support of any person within the scope of section 303(b)(1) of the Act as enacted (or section 303(b)(1)(A) of the Act as amended effective June 1, 1977) is an order falling within the definition of "garnishment" order contained in section 302(c) of the Act if, pursuant to it, the earnings of any individual are required to be withheld to meet the requirements of the order.

30. The Order for Wage Assignment referred to in paragraph number 10 hereof was a garnishment order within the meaning of the definition of "garnishment" in section 302(c) of the Act.

■ 31. Any order which orders or coerces a principal defendant to consent to withholding by a garnishee-defendant or prospective garnishee-defendant, or to allegedly consent voluntarily to such withholding, is for purposes of the Act the same as an order which itself directly requires withholding.

32. Whenever earnings are withheld pursuant to the requirements of any garnishment order, disposable earnings are absorbed. The question is whether in a particular case such absorption violates any of the restrictions contained in the Act, not whether such absorption takes place.

3. Since the 1977 Amendment, effective June 1, 1977, section 303(c) of the Act has provided that:

33. Since the Order for Wage Assignment, entered by the court which entered the Divorce Judgment, was a "garnishment" order within the meaning of section 302(c) of the Act, the withholding of earnings of Mr. Jones pursuant to it absorbed disposable earnings for purposes of the application of the general restrictions in section 303(a) of the Act, even though pursuant to section 303(b)(1) of the Act (section 303(b)(1)(A) of the Act as amended effective June 1, 1977), it was not itself subject to the general restrictions.

■ 34. Establishing the order of priority between or among garnishment orders as to their claim to earnings which may be withheld pursuant to "garnishment" within the meaning of section 302(c) of the Act, without violating the restrictions contained in the Act, is not governed by the Act and is governed by State law in the absence of a controlling federal law; but in all events, any restrictions the Act places on the amount of earnings which may be withheld pursuant to garnishment must be adhered to.

35. Prior to the 1977 Amendment,[3] effective June 1, 1977, section 303(c) of the Act provided that:

(c) No court of the United States or any State may make, execute, or enforce any order or process in violation of this section.

■ 36. Under the supremacy clause in Article VI of the federal Constitution, federal law, when within the scope of the powers delegated to the federal government by the federal Constitution, takes precedence over State law; and State courts, just as much as the federal courts, must follow and give precedence to such federal law, especially where the law includes a command expressly running to such courts, as is true under section 303(c) of the Act.

■ 37. Where a garnishment order(s) exempted by the Act from the general re-

(c) No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section.

strictions is entitled to priority over a garnishment order not exempted from the general restrictions, as was the case under applicable Michigan law in the garnishment proceeding in the State Court as described herein where the child support was entitled to priority over the price of sold goods constituting the principal judgment against Mr. Jones in favor of Sears, nothing may be withheld pursuant to the non-exempt garnishment order unless, and except to the extent that, the exempted order(s) having such priority leave(s) the "maximum part" specified in the general restrictions not fully absorbed.

38. This Court having entered these Findings of Fact and Conclusions of Law and the Secretary having accepted the representation tendered by each of the defendants that that defendant has made changes in its policies and procedures so that in all activities of that defendant, that defendant will comply with the Act as interpreted in the conclusions of law stated herein, including refraining from making, executing, enforcing, or seeking or knowingly accepting the benefits of the making, execution or enforcement of any order or process violative of the Act, as so interpreted, and including the public defendants revising the writ of garnishment form used, so as, as to that public defendant, to affirmatively prevent garnishee-defendants from making disclosures and withholdings of earnings violative of the Act, as so interpreted, and all the parties having agreed that this action may be dismissed on those terms without the entry of a prospective injunction, this Court will so order.